■ NORMAN CARTER, Respondent, v ZENAIDA TANA et al., Defendants, and ALISON SPEAR et al., Appellants. [891 NYS2d 714]—

Spain, J.

After visiting his primary care physician in February, March and April 2005 complaining of swelling in both legs, plaintiff was referred to defendant Mohammed Monzur, a nephrologist and partner with defendant Capital District Renal Physicians, P.C. (hereinafter CDRP), to rule out possible nephrotic syndrome, a disease of the kidney. Upon plaintiff's initial visit in April 2005, Monzur noted a two plus bilateral pitting edema of plaintiff's legs and prescribed a diuretic for the swelling. On May 6, 2005 when plaintiff again saw Monzur, he continued to complain of swelling in both legs. Monzur noted that plaintiff had increased to four plus bilateral pitting edema and, based

upon various blood work and results of a kidney biopsy, diagnosed plaintiff with minimal change disease (a kidney disorder) for which he prescribed various medications and scheduled a follow-up visit in eight weeks.

Several days later, on May 17, 2005, plaintiff presented at defendant Albany Memorial Hospital where he was seen by defendant Alison Spear, an emergency room physician. Plaintiff's primary complaint was sudden and worsening swelling in both legs and feet. He also reported that two days earlier he experienced shortness of breath upon exertion and severe but brief chest pains. Spear examined plaintiff, noting bilateral pitting edema, no chest pain and slightly elevated troponin, indicative of possible cardiac event, and requested that defendant Ramon Fabregas, a cardiologist and partner with defendant Primary Care Physicians, PLLC (hereinafter PCP), evaluate plaintiff. Based upon plaintiff's worsening leg swelling, history of kidney disease, discomfort in his left foot suggesting claudication of his left lower extremity and elevated troponin level, Fabregas admitted him to the hospital for observation due to a possible myocardial infarction. Defendant John Bennett, also a cardiologist and PCP partner, oversaw plaintiff's treatment while in the hospital and ultimately diagnosed an elevated troponin level and chest pain of an unclear etiology, ruled out a myocardial infarction and released plaintiff on May 19, 2005.

Thereafter, on May 28, 2005, plaintiff reported to his primary care physician due to increased swelling and multiple blisters on his left leg, which the physician lanced and bandaged. On May 31, 2005, plaintiff notified Monzur's office of his recent visit with his primary care physician and complained of continuing swelling, blistering and an inability to bend his left leg. He was given the next available appointment on June 2, 2005, at which time Monzur noted that plaintiff's left big toe was gangrenous and cold and immediately referred him to an emergency room to be evaluated by a vascular surgeon. Plaintiff was eventually diagnosed with peripheral vascular insufficiency and left lower extremity ischemia with skin ulceration. After attempts to restore circulation in his leg proved unsuccessful, plaintiff underwent an above-the-knee amputation of his left leg.

Plaintiff commenced this medical malpractice and negligence action alleging that defendants' failure to properly examine and diagnose a peripheral vascular condition, for which referral and treatment of the condition was delayed, resulted in the above-the-knee amputation of his left leg. Following joinder of issue, Spear, Monzur, CDRP, Fabregas, Bennett and PCP (hereinafter

collectively referred to as defendants)* moved for summary judgment dismissing the complaint. Supreme Court denied the motions, finding that the conflicting medical opinion of plaintiff's expert raised issues of fact precluding summary judgment. This appeal ensued.

Initially, there is no dispute that defendants met their initial burden of establishing a prima facie entitlement to summary judgment by submitting affidavits from experts in their respective medical fields who opined, with a reasonable degree of medical certainty, that given plaintiff's presentation of symptoms and recent history of nephrotic syndrome, defendants did not depart from the standard of medical care in treating plaintiff as limited by their respective medical specialties. Accordingly, the burden shifted to plaintiff to present expert medical opinion evidence that there was a deviation from the accepted standard of care and that this departure was a proximate cause of plaintiff's injury (see *Daugharty v Marshall*, 60 AD3d 1219, 1221 [2009]; *Bell v Ellis Hosp.*, 50 AD3d 1240, 1241 [2008]).

In that regard, plaintiff submitted a redacted affidavit of a physician licensed to practice medicine in New York and certified by the American Board of Surgery with concentrations in general and vascular surgery. The affidavit addressed each defendant physician separately, making factual references to their individual treatment and care of plaintiff. Given his review of the medical records, depositions and his own training and experience, it was his opinion, with a reasonable degree of medical certainty, that each defendant physician "departed from good and acceptable standards of medical care and treatment" that was a substantial factor in causing and/or contributing to the loss of plaintiff's left leg. According to plaintiff's expert, each of the four defendant physicians failed to obtain and/or heed plaintiff's proper and thorough clinical and medical history. The expert also set forth specific symptoms plaintiff presented with at each examination that are indicative of vascular disease, as well as noted specific factors in plaintiff's medical history that increased his risk for peripheral vascular insufficiency. Given plaintiff's complaints and history, plaintiff's expert essentially opined that a thorough examination of plaintiff's lower extremities for vascular disease should have ensued, noting specific diagnostic tests, and that a prompt referral for a vascular consult should have been made. Additionally, plaintiff's expert

---

* Plaintiff's medical malpractice and negligence actions against his primary care physician, the practice with which she was associated, another physician in that practice, as well as Albany Memorial Hospital were discontinued during the pendency of this appeal.

indicated that this delay in examination, treatment and consultation for peripheral vascular disease—which he represented was present in May 2005—was a substantial factor in causing or contributing to the amputation of plaintiff's leg.

We are unpersuaded by defendants' contentions that the expert's affirmation was speculative and conclusory and, therefore, insufficient to defeat the motions for summary judgment. "Although '[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat [a] defendant physician's summary judgment motion' " (*Bell v Ellis Hosp.*, 50 AD3d at 1242, quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 325 [1986]), here, we find that the expert's affirmation sufficiently set forth the essential elements of plaintiff's claim. Furthermore, although plaintiff's expert did not practice in any of defendant physicians' particularized medical fields, given the nature of the medical subject matter of the malpractice action, there is a sufficient basis from which to infer that the expert's opinion regarding examination and treatment of plaintiff is reliable (*see Bell v Ellis Hosp.*, 50 AD3d at 1242). Contrary to defendants' contentions, we find that the specialized skills and expertise of plaintiff's expert were sufficiently set forth in the affidavit, and "any alleged lack of skill or experience goes to the weight to be given to the opinion, not its admissibility" (*Bell v Ellis Hosp.*, 50 AD3d at 1242).

In light of the foregoing, we find that summary judgment was properly denied.

Cardona, P.J., Lahtinen, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.