■ TIMOTHY J. DERUSHA, Appellant, v ROBERT G. SELLIG, Respondent, et al., Defendants. [939 NYS2d 610]—

Stein, J.

In August 2001, plaintiff injured himself in his employer's parking lot when his knee gave out. Plaintiff was examined at defendant Adirondack Orthopedic Physicians and Surgeons (hereinafter Adirondack) by defendant Robert G. Sellig (hereinafter defendant), a medical doctor at Adirondack.[1] In the course of his physical examination of plaintiff's knee at that time, defendant heard a "click over the medial joint line." Based on this examination, defendant diagnosed plaintiff with a torn medial meniscus, referred him to defendant Douglas M. Petroski, another medical doctor at Adirondack, and requested authorization for a medial meniscectomy to be performed by Petroski. Twelve days later, defendant saw Petroski, who subsequently performed a medial meniscectomy and discovered that plaintiff did not have a torn medial meniscus. Plaintiff thereafter had multiple elective surgeries on his knee, followed by a knee replacement, which led to an infected prosthesis and staph infection. Ultimately, plaintiff elected to undergo an above-the-knee amputation. Plaintiff commenced the instant action for medical malpractice against, among others, Adirondack and several doctors at Adirondack, including defendant. Defendant moved for summary judgment dismissing the complaint against him. Supreme Court granted defendant's motion and this appeal by plaintiff ensued.

We reverse. As the proponent of a motion for summary judgment in a medical malpractice action, defendant " 'bore the initial burden of establishing that there was no departure from accepted standards of practice or that plaintiff was not injured thereby' " (*Menard v Feinberg*, 60 AD3d 1135, 1136 [2009], quoting *Amodio v Wolpert*, 52 AD3d 1078, 1079 [2008]). Here, plaintiff alleged that defendant deviated from the standard of care by, among other things, failing to properly examine, test, diagnose and treat plaintiff's knee injury and pain. Defendant " 'rebut[ted] plaintiff's claim of [medical] malpractice with factual proof' " (*Suib v Keller*, 6 AD3d 805, 806 [2004], quoting *Horth v Mansur*, 243 AD2d 1041, 1042 [1997]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]) by submitting af-

---

1. This was the only time plaintiff saw defendant.

fidavits—including his own detailed affidavit (*see Suib v Keller*, 6 AD3d at 806)—deposition testimony and medical records. Defendant testified regarding, among other things, the standard of care applicable at the time of plaintiff's examination. In his affidavit, he specifically averred that, in his opinion, an MRI was not indicated for evaluation of plaintiff's left knee,[2] and that "no act or omission by [him] caused or contributed to any injury that [plaintiff] is alleging in this lawsuit." This evidence was sufficient to establish defendant's prima facie entitlement to judgment in his favor as a matter of law, thus shifting the burden to plaintiff to demonstrate a triable question of fact with regard to defendant's departure from accepted medical practice and whether such departure was the proximate cause of plaintiff's injury (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Adams v Anderson*, 84 AD3d 1522, 1523 [2011]; *Caulkins v Vicinanzo*, 71 AD3d 1224, 1226 [2010]; *Menard v Feinberg*, 60 AD3d at 1137).

To that end, plaintiff submitted the affidavit of Lawrence Weis, an orthopedic surgeon, who opined that defendant deviated from the applicable standard of care by, among other things, failing to "obtain an appropriate history," "perform an appropriate physical exam," or "obtain and confirm the diagnosis of [a] torn medial meniscus by an MRI." Notably, Weis averred that a finding of a click over the medial joint line upon physical examination is an inadequate basis upon which to diagnose a medial meniscus tear. Weis further opined that defendant's deviations from the standard of care resulted in plaintiff having to undergo an "unnecessary and an unindicated left knee arthroscopic surgery" and were a substantial factor in causing plaintiff to incur specified additional injuries. In our view, Weis' affidavit was sufficient to demonstrate triable issues of fact regarding the appropriate standard of care and whether any deviation by defendant therefrom was a substantial factor in causing plaintiff's injuries (*see Hickey v Arnot-Ogden Med. Ctr.*, 79 AD3d 1400, 1401 [2010]; *Menard v Feinberg*, 60 AD3d at 1137-1138; *Toomey v Adirondack Surgical Assoc.*, 280 AD2d 754, 755 [2001]), thereby precluding summary judgment (*see Datiz v Shoob*, 71 NY2d 867, 869 [1988]; *Plourd v Sidoti*, 69 AD3d 1038, 1039 [2010]; *Carter v Tana*, 68 AD3d 1577, 1579-1580 [2009]).

Finally, defendant's claim that he bears no liability to plaintiff

---

2. Defendant testified that, at the time of his physical examination of plaintiff in August 2001, the standard of care did not require an MRI, but that, at the time of his deposition in December 2009, the standard of care did require such a scan.

because he merely referred plaintiff to Petroski, who performed his own examination and made an independent diagnosis, is unavailing. Where, as here, "there is evidence in the record from which the jury could . . . conclude[ ] that defendant—the referring [physician]—had been independently negligent in diagnosing . . . plaintiff's condition, and that this misdiagnosis constituted a proximate cause of plaintiff's injuries . . . , defendant, as the initial wrongdoer, cannot escape liability merely by showing that the subsequent treating physician to whom plaintiff was referred was also negligent" (*Datiz v Shoob*, 71 NY2d at 868-869).

Rose, J.P., Malone Jr. and McCarthy, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.