■ MELISSA MARTINO, Appellant, v JAMES MILLER, Respondent. [949 NYS2d 225]—

Kavanagh, J.

Defendant, a board-certified plastic surgeon, performed numerous surgeries on plaintiff,[1] including, in late September 2006, a bilateral breast reduction surgery, and, at the same time, liposuction and brachioplasty. During the breast reduction surgery, defendant used a technique known as the pedicle technique, which involves preserving a pedicle of pyramid-shaped tissue attached to the nipple areolar complex (hereinafter NAC). Plaintiff was released from the hospital and presented to defendant for follow-up care. On her third follow-up visit, defendant noted that the NAC tissue on plaintiff's right breast displayed some superficial skin loss and diminished sensation. The tissue continued to deteriorate and, by the end of November 2006, defendant informed plaintiff that reconstructive surgery might be needed to correct the damage done to it. Plaintiff ceased treating with defendant and commenced this medical malpractice action alleging that he was negligent in the manner in which the surgery was performed and in the care he provided following the surgery. Thereafter, defendant moved for summary judgment dismissing the complaint and plaintiff cross-moved for summary judgment seeking to dismiss certain affirmative defenses raised by defendant. Supreme Court granted defendant's motion and denied plaintiff's cross motion. Plaintiff now appeals.

As the movant for summary judgment in a medical malpractice action, defendant was required to establish that during his treatment of plaintiff, " 'there was no departure from accepted standards of practice or that plaintiff was not injured thereby' " (*Menard v Feinberg*, 60 AD3d 1135, 1136 [2009], quoting *Amodio v Wolpert*, 52 AD3d 1078, 1079 [2008]; *accord Derusha v Sellig*, 92 AD3d 1193, 1193 [2012]; *see Hickey v Arnot-Ogden Med. Ctr.*, 79 AD3d 1400, 1401 [2010]). In such an action, the affidavit of a

---

1. This included an abdominoplasty surgery conducted in 2003 which resulted in plaintiff developing a pulmonary embolism and she was placed on anticoagulation medication.

defendant physician may be sufficient to meet that burden if it is "detailed, specific and factual in nature and does not assert in simple conclusory form that the physician acted within the accepted standards of medical care" (*Toomey v Adirondack Surgical Assoc.*, 280 AD2d 754, 755 [2001]; *see Horth v Mansur*, 243 AD2d 1041, 1042 [1997]).

Here, defendant affirmed that there were no complications during the surgical procedure he performed on plaintiff and that he comported with appropriate standards of medical care. Defendant stated that he chose the pedicle surgical technique—one that he had maintained is commonly employed in breast reduction surgical procedures performed in the United States—because "the viability of the [NAC] is maintained by preserving a pedicle of pyramid shaped tissue attached to the NAC." Defendant explained that, to avoid compromising the viability of NAC tissue during surgery, he periodically examined the NAC on both breasts to ensure that their color was normal and that there was adequate "capillary refill." He stated that, while performing the surgery, he "removed tissue from the right breast while maintaining the vascular pedicle intact, sparing as much tissue as possible, slowly, meticulously, carefully excising the breast tissue around the pedicle to preserve a broad base and blood supply to the NAC." He averred that "[t]his technique met or even exceeded all standards of care for a plastic surgeon performing this procedure" and that "even with this technique compromise of the NAC is a well known complication of breast reduction surgery and can and does occur in the absence of negligence." In addition, defendant stated that, prior to conducting the surgery, he consulted with plaintiff's hematologist, who recommended that Heparin be given to plaintiff to prevent any clotting that might occur as a result of the surgery. Moreover, defendant maintained that plaintiff's post-surgery anemia and blood clotting disorder were not related to the loss of the NAC, and neither was the liposuction procedure that was performed on plaintiff at the same time. This affidavit was sufficient to shift the burden to plaintiff to demonstrate that triable questions of fact exist as to whether defendant departed from accepted standards of medical practice in the manner in which the surgical procedure was performed—and in the post-surgical care provided plaintiff—and, as a result, plaintiff was injured (*see Derusha v Sellig*, 92 AD3d at 1193; *Snyder v Simon*, 49 AD3d 954, 956 [2008]; *Passero v Puleo*, 17 AD3d 953, 954 [2005]; *Toomey v Adirondack Surgical Assoc.*, 280 AD2d at 755).

In that regard, plaintiff submitted the affirmation of Peter Neumann, a board-certified plastic surgeon, which, in effect,

restated many of the allegations set forth in plaintiff's bill of particulars. Notably, Neumann concluded that defendant was negligent because he departed from accepted standards of medical practice in the treatment rendered plaintiff, but failed to identify what those accepted practices are and how defendant's treatment of plaintiff deviated from them (*see Passero v Puleo*, 17 AD3d at 954; *Torns v Samaritan Hosp.*, 305 AD2d 965, 967 [2003]; *Yamin v Baghel*, 284 AD2d 778, 779 [2001]). Neumann also contended that defendant committed malpractice by performing "blunt force liposuction to the lateral chest wall at the same time as breast reduction," but does not explain why performing such a procedure contemporaneously with the breast reduction surgery constituted a departure from acceptable medical practice or how performing the two procedures during the same surgery caused plaintiff's injury (*see Snyder v Simon*, 49 AD3d at 956; *Passero v Puleo*, 17 AD3d at 954-955).

We also note that Neumann's assertion that defendant failed to "timely diagnose and properly treat wound abscess in [p]laintiff's right breast [NAC]" is belied by the record and ignores, without explanation, defendant's deposition testimony and medical records documenting the postoperative examinations performed on plaintiff by defendant. In particular, this evidence, which is essentially uncontradicted, established that during plaintiff's first two postoperative appointments with defendant, the NAC wound appeared "clean" and only upon the third visit was "some NAC superficial epidermis lysis" with diminished sensation noted. In addition these records document that during these examinations, defendant treated plaintiff's wound with topical medication and discussed with her possible approaches to be employed in remedying the tissue damage to the NAC. Further, defendant recommended that plaintiff wear a looser fitting brassiere to enhance blood circulation to the affected area. Finally, while plaintiff argues that defendant's use of an ACE bandage to dress her wound following the surgery constituted a departure from accepted medical standards, Neumann, in his affirmation, does not suggest any other method that should have been employed to dress plaintiff's wounds following the surgery (*see Snyder v Simon*, 49 AD3d at 956; *Passero v Puleo*, 17 AD3d at 954-955).[2] As such, the affirmation of plaintiff's expert failed to raise any triable issues of fact as to

---

**2.** Neumann also argued that defendant departed from accepted standards of care by failing to advise plaintiff of the increased risk of damage to the NAC as a result of her prior abdominoplasty and history of anemia, as well as the use of anticoagulation medication prior to the surgery. However, plaintiff, in her bill of particulars, specifically states that she is "not asserting a claim for

whether defendant deviated from accepted standards of medical practice in the care he provided plaintiff and, therefore, defendant's motion for summary judgment was properly granted. As a result, we need not reach plaintiff's claims regarding her cross motion.

Mercure, J.P., Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.

 ---

lack of informed consent at the present time," and no such claim has since been raised by plaintiff in the course of this action.