■ RUBY OLINSKY-PAUL, an Infant, by RONDA OLINSKY-PAUL, Her Mother and Guardian, et al., Respondents, v IRA JAFFE et al., Respondents, and NORTHERN DUTCHESS HOSPITAL, Appellant. [963 NYS2d 744]—

Garry, J. Appeal from an order of the Supreme Court (Work, J.), entered March 5, 2012 in Ulster County, which, among other things, partially denied a motion by defendant Northern Dutchess Hospital for summary judgment dismissing the complaint against it.

In 2004, plaintiff Ronda Olinsky-Paul (hereinafter plaintiff) gave birth to plaintiff Ruby Olinsky-Paul (hereinafter the infant) at defendant Northern Dutchess Hospital (hereinafter NDH) in the Town of Rhinebeck, Dutchess County. Plaintiff had contracted with defendant Julia Lange Kessler to serve as midwife for her planned home birth and with defendant Ira Jaffe, an obstetrician, to provide emergency medical services at NDH if needed. Kessler detected signs of fetal distress during plaintiff's labor and transferred her to NDH, where Jaffe performed an emergency cesarean section, assisted by defendant Daniel Melamed, a physician, and defendant Lucas Terranova, an anesthesiologist. The infant was subsequently diagnosed with severe impairments allegedly resulting from a lack of oxygen during birth.

Plaintiffs initiated this medical malpractice action alleging,

among other things, that NDH negligently failed to make an operating room and staff available on a timely basis. NDH moved for summary judgment dismissing all claims against it. Supreme Court granted the motion as to NDH's alleged vicarious liability for the acts of other defendants, but denied it with respect to NDH's independent liability. NDH appeals.

As the movant seeking summary judgment, NDH was required to establish on a prima facie basis that its medical treatment did not depart from accepted standards of care or that any such departure did not cause the injury (*see LaFountain v Champlain Val. Physicians Hosp. Med. Ctr.*, 97 AD3d 1060, 1061 [2012]; *Martino v Miller*, 97 AD3d 1009, 1009 [2012]). To this end, NDH submitted the affidavit of an expert physician and the deposition testimony of plaintiff and several of the medical professionals involved in her treatment. The physicians who assisted Jaffe with the cesarean section testified that they were already present at NDH before the surgery was ordered. Terranova stated that he was advised that a cesarean section might be required before plaintiff arrived at NDH and immediately began preparing for this eventuality; he stated that a surgical team had been assembled and an operating room prepared before Jaffe determined that the surgery was necessary. Melamed testified that he arrived on the obstetrical floor no more than two minutes after Jaffe asked for his assistance, and Jaffe himself testified that he did not recall any difficulty in assembling a surgical team to assist with the operation.

However, NDH's submissions also include conflicting evidence that supports Supreme Court's denial of summary judgment. Jaffe's operative report appears to contradict Terranova's statement regarding the availability of a surgical team, stating that after Jaffe ordered the cesarean section he "had the patient continue to bear down while awaiting the [operating room] team." Melamed testified that he was the only person in the operating room when he arrived after Jaffe summoned him, and that he waited there for "sometime" until others appeared. Significantly, the medical records reveal an unexplained delay of 25 to 50 minutes between Jaffe's order for surgery and plaintiff's transfer to the operating room. Plaintiff testified that she asked why she was not yet in surgery and was told by several medical staffers that there was no team or no anesthesiologist. She further stated that she heard Jaffe say that he "could get this baby out in two minutes if anesthesia comes." Another witness testified that "they were waiting for people to come" before plaintiff was taken to the operating room.

NDH's expert physician, Frederick Feiner, failed to address

this apparent delay in what was undisputedly an emergency procedure. Although he discussed other facts pertaining to the surgery in some detail and opined, among other things, that NDH complied with the applicable standard of care by "promptly assembl[ing]" a surgical team, Feiner neither mentioned the lapse in time before this team took over plaintiff's care nor opined as to whether this lapse was consistent with accepted medical practices. To establish a party's entitlement to summary judgment, a physician's affidavit "must be detailed, specific and factual in nature" and may not simply assert in conclusory fashion that a defendant complied with the standard of care without relating the contention to the particular facts at issue (*LaFountain v Champlain Val. Physicians Hosp. Med. Ctr.*, 97 AD3d at 1061 [internal quotation marks and citations omitted]; *see Toomey v Adirondack Surgical Assoc.*, 280 AD2d 754, 755 [2001]). In the absence of any factual discussion of the delay, Feiner's general assertion that NDH "acted at all times in a prompt, timely, and reasonable manner" lacks specificity. Accordingly, NDH failed to establish its prima facie entitlement to summary judgment, and it is unnecessary to address the sufficiency of plaintiffs' opposing papers (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 325-327 [1986]; *LaFountain v Champlain Val. Physicians Hosp. Med. Ctr.*, 97 AD3d at 1062).

Mercure, J.P., Spain and McCarthy, JJ., concur. Ordered that the order is affirmed, with one bill of costs.