McCarthy, J.
Appeal from an order of the Supreme Court *1284 (Muller, J.), entered January 16, 2013 in Clinton County, which denied defendants’ motions for summary judgment dismissing the complaint.
Edwin E. Cole Sr. (hereinafter decedent) was admitted to a hospital maintained by defendant Champlain Valley Physicians’ Hospital Medical Center (hereinafter CVPH) with complaints of a chronic cough that had begun to produce bloody sputum. A CT scan of decedent’s chest revealed fluid collection in the division between the upper and lower lobes of his left lung. An attempt to drain the fluid was unsuccessful and resulted in a collapsed lung. Defendant Craig Nachbauer, a consulting thoracic surgeon, inserted a chest tube to reinflate the lung. The next day, Nachbauer inserted another chest tube and, thereafter, continued to monitor decedent. Defendant William Bruce Bunn, a pulmonologist, scheduled a bronchoscopy[1] for the next day, but canceled the procedure because decedent was suffering from respiratory distress. Bunn and Nachbauer discussed the possibility of performing a thoracoscopy[2] to drain the fluid and scheduled the surgery for two days later. Decedent’s condition deteriorated, including advancing pneumonia, renal failure and respiratory distress requiring him to be put on a ventilator. Bunn and Nachbauer determined that decedent was not stable enough to undergo surgery at that time. Approximately two weeks after decedent entered the hospital, Bunn determined that he was stable enough for surgery. The day before the scheduled thoracoscopy, Bunn performed a thoracentesis,[3] removing 1000 ccs of fluid from around decedent’s right lung. The next day, Nachbauer performed a bronchoscopy and thoracotomy, removing fluid and a hematoma of old, clotted blood from the left lung area. Nachbauer completed the surgery, apparently without incident, and left the operating room. As defendant Madeline Waid, an anesthesiologist, was replacing a double lumen endotracheal tube with a single lumen tube, a large amount of blood began shooting from the endoctracheal tube. The blood obstructed decedent’s airway, ultimately leading to cardiac arrest and death.
Plaintiff, decedent’s widow, commenced this medical malprac *1285 tice and wrongful death action against numerous defendants. The five remaining defendants,[4] through three separate motions, moved for summary judgment dismissing the complaint. Supreme Court denied the motions, prompting defendants to appeal.
Defendants, except CVPH, met their initial burden of establishing entitlement to summary judgment. To meet the initial burden on a summary judgment motion in a medical malpractice action, defendants must present factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that they complied with the accepted standard of care or did not cause any injury to the patient (see Suib v Keller, 6 AD3d 805, 806 [2004]). Defendants may meet that burden by submitting a defendant physician’s affidavit or affirmation describing the facts in specific detail and opining that the care provided did not deviate from the applicable standard of care (see LaFountain v Champlain Val. Physicians Hosp. Med. Ctr., 97 AD3d 1060, 1061 [2012]; Martino v Miller, 97 AD3d 1009, 1009-1010 [2012]).
Here, Nachbauer submitted medical records, deposition testimony from numerous physicians, and his own affidavit detailing the care that he provided and opining that his actions fell within the appropriate standard of care. Waid and CVPH submitted medical records, Waid’s affidavit and the affidavit of an expert anesthesiologist asserting that Waid’s actions met or exceeded the standard of care. Bunn and his practice group, defendant Champlain Valley Pulmonary Associates, PC. (hereinafter CVPA), submitted medical records and the affidavit of an expert in pulmonary medicine and critical care opining that Bunn complied with the standard of care. These submissions were sufficient to meet the burden on summary judgment for Nachbauer, Waid, Bunn and CVPA.[5] While the submissions were sufficient to show a lack of culpability for Waid — as an employee of CVPH — during the fatal surgery, they did not address decedent’s care by CVPH’s employees and agents in the two weeks leading up to that surgery, which was also alleged as malpractice contributing to decedent’s injuries and death. Accordingly, CVPH was not entitled to summary judgment because it did not meet its initial burden, regardless of the sufficiency of plaintiff’s opposing papers (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; LaFountain v Champlain Val. Physicians Hosp. Med. Ctr., 97 AD3d at 1062).
*1286 As Nachbauer, Waid, Bunn and CVPA met their initial burden, the burden shifted to plaintiff to demonstrate triable questions of fact regarding whether these defendants deviated from the accepted standards of care and whether decedent suffered injury and death as a result of those deviations (see Martino v Miller, 97 AD3d at 1010; Maki v Bassett Healthcare, 85 AD3d 1366, 1369 [2011], appeal dismissed 17 NY3d 855 [2011], lv dismissed and denied 18 NY3d 870 [2012]). In opposition to the motions, plaintiff submitted a detailed expert affidavit.[6] The expert opined that Waid, through overinflation or improper insertion of the endotracheal tube, caused the hemorrhage that immediately led to decedent’s death. Although the exact source of bleeding was never identified, the expert explained possible ways that Waid may have caused the hemorrhage and stated that such bleeding does not ordinarily occur in the absence of negligence, Waid had exclusive control over decedent’s body and the medical instrumentalities at the time, and decedent was unconscious so he could not have contributed to the situation. Therefore, questions of fact exist and plaintiff may rely on the doctrine of res ipso loquitur to attempt to establish Waid’s negligence (see Kambat v St. Francis Hosp., 89 NY2d 489, 494 [1997]; DeCarlo v Eden Park Health Servs., Inc., 66 AD3d 1211, 1212 [2009]).
While conceding that Bunn and Nachbauer did not cause the bleeding during surgery that immediately led to decedent’s death, the expert opined that these defendants’ inadequate care in the preceding two weeks left decedent in a weakened condition such that he could not survive the surgery, but that he could have survived if given proper care in a timely manner. Specifically, the expert states that Bunn should have ordered or performed a bronchoscopy soon after decedent’s admission to the hospital, performed the thoracentesis earlier, and scheduled and performed the thoracotomy sooner. Although the primary cause of death was cardiorespiratory arrest due to an acute bleed, other contributing causes of death listed on the autopsy report include acute and chronic lung congestion, “[b]ilateral pleural effusions” and “[s]tatus post drainage blood from the left side of the pleural space.” Bunn’s expert pulmonologist *1287 stated that Bunn considered surgery early on and scheduled it, but had to cancel it due to decedent’s deteriorating condition. Bunn’s expert opined that Bunn exercised appropriate medical judgment in accordance with the standard of care by postponing surgery until decedent’s respiratory distress and renal failure were under control. Plaintiffs expert indicates that decedent’s organ failure and respiratory distress resulted from a failure to timely address the fluid surrounding the lungs, and that addressing the lung condition aggressively and immediately would have avoided these other conditions that caused postponement of the surgery. These factual disputes create questions of fact concerning whether Bunn, and CVPA vicariously, breached the duty to provide adequate medical care and whether any such breach proximately caused decedent any injury.
Plaintiffs expert reaches the same conclusions about Nachbauer’s failure to treat decedent’s other conditions earlier. Nachbauer contends that, as a surgical consultant rather than a primary care or attending physician, his duty to decedent was limited. Indeed, a physician may limit his or her duty “to those medical functions undertaken by the physician and relied upon by the patient” (Markley v Albany Med. Ctr. Hosp., 163 AD2d 639, 640 [1990]; accord Dombroski v Samaritan Hosp., 47 AD3d 80, 84 [2007]). Nachbauer averred that his role was limited to inserting chest tubes after decedent’s lung collapsed, monitoring those tubes and consulting with decedent’s attending physicians regarding the possibility that he would need thoracic surgery. Nachbauer stated that other physicians were treating decedent’s infections, pneumonia and renal failure, such that he was not required to address those issues. However, considering the record in a light most favorable to plaintiff, as the nonmoving party (see Longtemps v Oliva, 110 AD3d 1316, 1318 [2013]), the medical records and Nachbauer’s own deposition testimony indicate that he consulted with Bunn regarding plaintiffs condition and the scheduling of surgeries. To the extent that Nachbauer participated in such consultations and decisions regarding the scheduling of surgeries, he had a duty to decedent to adhere to the appropriate standard of care (see Cygan v Kaleida Health, 51 AD3d 1373, 1375 [2008]; Graddy v New York Med. Coll., 19 AD2d 426, 429 [1963] [stating that where physicians participate jointly in decision-making or diagnosis, each incurs liability for negligence]; compare Dombroski v Samaritan Hosp., 47 AD3d at 86; Markley v Albany Med. Ctr. Hosp., 163 AD2d at 640). Contrasting these defendants’ submissions with the opinion of plaintiffs expert that earlier surgical treatment would have provided decedent with a better outcome, the record demonstrates the existence of questions of fact concerning *1288 whether Nachbauer deviated from the standard of care and the effect of any such deviation on decedent’s health and death. Accordingly, Supreme Court appropriately denied defendants’ motions for summary judgment.
Although the record does not contain any information indicating that decedent suffered conscious pain and suffering during his final surgery, he may have suffered such pain and suffering as a result of any alleged medical malpractice committed in the two weeks of hospitalization leading up to that surgery. Thus, that aspect of damages may be sought at trial.
Peters, EJ., Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.

. A bronchoscopy is an examination with a lighted, flexible tube that is inserted into the patient’s trachea for diagnosis of lung problems or to remove inhaled objects.

. A thoracoscopy involves using a lighted endoscope, inserted through incisions in the chest wall, to examine the lungs and obtain tissue samples for testing.

. Thoracentesis involves inserting a needle into the pleural cavity — the space between the two thin membranes that line and surround the lungs — to remove fluid or air.

. Multiple original defendants are no longer involved, as a result of either stipulations of discontinuance or successful motions for summary judgment.

. The allegations against CVPA are all predicated on vicarious liability related to Bunn’s treatment of decedent.

. Nachbauer argues that plaintiff’s expert affidavit is inadmissible because the expert is presumably an employee of plaintiffs counsel’s law firm. Without acknowledging whether the expert is so employed, we reject Nachbauer’s argument. Any alleged bias may affect the expert’s credibility, but not his or her competency to be a witness (see Caldwell v Cablevision Sys. Corp., 20 NY3d 365, 368 [2013]), and courts do not assess witness credibility on motions for summary judgment (see Ferrante v American Lung Assn., 90 NY2d 623, 631 [1997]).