*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 20, 2014            518207
                                                    518208
_____

GAIL C. HOWARD, Individually
    and as Administrator of the
    Estate of SCOTT R. HOWARD,
    Deceased,
                        Appellant,

        v                                MEMORANDUM AND ORDER

CRAIG STANGER et al.,
                        Respondents.
_____

Calendar Date:  October 14, 2014

Before:  Peters, P.J., Stein, Rose, Egan Jr. and Clark, JJ.

_____

        Freeman Howard, PC, Hudson (Paul M. Freeman of counsel),
for appellant.

        Feldman Kieffer, LLP, Buffalo (James E. Eagan of counsel),
for Craig Stanger and another, respondents.

        O'Connor, O'Connor, Bresee & First, PC, Albany (Justin O'C.
Corcoran of counsel), for Columbia Memorial Hospital, respondent.

_____

Egan Jr., J.

        Appeals (1) from an order of the Supreme Court (McGrath,
J.), entered March 27, 2013 in Columbia County, which granted
defendants' motions for summary judgment dismissing the
complaint, and (2) from an order of said court (Zwack, J.),
entered July 23, 2013 in Columbia County, which denied
plaintiff's motion for reconsideration.

On January 29, 2009, Scott R. Howard (hereinafter decedent) became ill while testifying at the Columbia County Courthouse. Decedent advised responding emergency services personnel that he was suffering from, among other things, back pain and numbness in his legs and thereafter was transported via ambulance to defendant Columbia Memorial Hospital. Upon his arrival in the hospital's emergency department, decedent relayed his symptoms to the nursing staff, indicating, among other things, that he had experienced dizziness and a "sudden onset of back discomfort" and that he "felt tingling in his legs." While in the emergency department, decedent displayed various gastrointestinal symptoms, including nausea and vomiting, in response to which defendant Craig Stanger, one of the attending physicians on duty that day, ordered medication to treat decedent's nausea and blood tests to evaluate his condition. After speaking with decedent and reviewing his laboratory results, Stanger discharged decedent with a diagnosis of gastroenteritis, acute stress reaction and renal insufficiency and directed him to follow up with his personal physician. The following day, decedent returned to the hospital's emergency department in cardiac arrest and, shortly thereafter, died – purportedly as the result of a cardiac tamponade due to a ruptured dissecting thoracic aortic aneurysm.

Plaintiff subsequently commenced this medical malpractice and wrongful death action against the hospital, Stanger and Stanger's employer, defendant Columbia Emergency Services, P.C. Following joinder of issue and discovery, defendants separately moved for summary judgment dismissing plaintiff's complaint. Supreme Court (McGrath, J.) granted defendants' motions, prompting plaintiff to move for reconsideration. Supreme Court (Zwack, J.) denied plaintiff's motion for reconsideration, and these appeals by plaintiff ensued.

Beginning with plaintiff's motion for reconsideration, to the extent that such motion sought reargument, no appeal lies from the denial thereof (see Wells Fargo, N.A. v Levin, 101 AD3d 1519, 1520 [2012], lv dismissed 21 NY3d 887 [2013]). To the extent that plaintiff sought leave to renew, it is well settled that "a motion to renew must be based upon newly discovered evidence which existed at the time the prior motion was made, but

was unknown to the party seeking renewal, along with a justifiable excuse as to why the new information was not previously submitted" (Matter of Kelly v Director of TRC Programs, 84 AD3d 1657, 1658 [2011] [internal quotation marks and citation omitted]; see Premo v Rosa, 93 AD3d 919, 920 [2012]). Notably, a motion to renew is "not a second chance to remedy inadequacies that occurred in failing to exercise due diligence in the first instance" (Onewest Bank, FSB v Slowek, 115 AD3d 1083, 1083 [2014] [internal quotation marks and citation omitted]).

Here, plaintiff's motion to renew was based upon her discovery that Stanger's license to practice medicine was under a one-year stayed suspension[1] at the time that he tendered his affidavit in support of defendants' respective motions.[2] As Stanger's license was under suspension, the argument continues, his affidavit necessarily was insufficient to discharge defendants' initial burden on the motions for summary judgment. Setting aside, for the moment, the overall sufficiency of Stanger's affidavit, the flaw in plaintiff's argument on this point – viewed in the context of the motion to renew – is that Stanger's license suspension was effective June 7, 2012, the underlying consent order entered into between Stanger and the Office of Professional Medical Conduct was a public document and plaintiff has failed to offer any explanation as to why such suspension could not have been discovered with due diligence prior to the point in time that plaintiff opposed defendants' motions in November 2012. Under these circumstances, plaintiff's

---

[1] The suspension was the product of a consent agreement and order, wherein Stanger agreed – in full satisfaction of the charges against him – not to contest the allegations that he committed professional misconduct by practicing medicine with negligence on more than one occasion with respect to his care and treatment of patients A and B in February 2008 and September 2008, respectively.

[2] The hospital expressly incorporated by reference Stanger's affidavit in support of its summary judgment motion.

motion to renew was properly denied (see Vieyra v Penn Toyota, Ltd., 116 AD3d 840, 841-842 [2014]; Webber v Scarano-Osika, 94 AD3d 1304, 1305-1306 [2012]; Hoffman v Pelletier, 6 AD3d 889, 890 [2004]).

Turning to the merits, "[t]he essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury" (Wexelbaum v Jean, 80 AD3d 756, 757 [2011] [internal quotation marks and citations omitted]). Here, plaintiff alleged that defendants departed from accepted standards of medical care by failing to, among other things, appreciate the significance of decedent's symptoms (particularly the sudden onset of back pain), properly interpret the results of his blood tests, consider a differential diagnosis of aortic dissection or aneurysm and order appropriate diagnostic testing — specifically, a CAT scan or transesophageal echocardiogram. Hence, in order to prevail upon their respective motions for summary judgment dismissing the complaint, defendants bore the initial burden of demonstrating that they did not deviate from accepted standards of practice or, if they did so, that such deviation did not cause any injury to decedent (see Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d 1283, 1285 [2014]; Longtemps v Oliva, 110 AD3d 1316, 1317 [2013]; LaFountain v Champlain Val. Physicians Hosp. Med. Ctr., 97 AD3d 1060, 1061 [2012]). To that end, defendants primarily relied upon Stanger's affidavit, wherein he discussed the "typical presentation for an aortic dissection and/or aortic aneurysm," delineated decedent's chief complaints and presenting symptoms upon arrival in the hospital's emergency department, recited the results of decedent's blood work and explained why he did not believe that further diagnostic testing was warranted.

To be sure, "a defendant physician's affidavit or affirmation describing the facts in specific detail and opining that the care provided did not deviate from the applicable standard of care" may be sufficient to discharge the moving party's initial burden on a motion for summary judgment (Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d at 1285; see Martino v Miller, 97 AD3d 1009, 1009-1010 [2012]; see also

Derusha v Sellig, 92 AD3d 1193, 1193-1194 [2012]) and, contrary
to plaintiff's assertion, the fact that Stanger's license was
under a stayed suspension at the time he prepared the subject
affidavit does not render his affidavit inadmissible for purposes
of the underlying motions (cf. Williams v Halpern, 25 AD3d 467,
468 [2006]).  Additionally, we find no merit to plaintiff's claim
that Stanger prepared his affidavit in violation of either the
underlying consent order or the terms of his probation.  Although
the terms of probation permitted Stanger to "practice medicine
only when monitored by a licensed physician, board certified in
an appropriate specialty," the terms of probation did not require
the practice monitor to directly supervise Stanger's treatment of
patients or, insofar as is relevant here, to review or supervise
the preparation of Stanger's affidavit.  Rather, the terms of
probation required the practice monitor to visit Stanger's
practice on at least a monthly basis and to review no fewer than
20 of Stanger's patient records in order to determine whether
Stanger's medical practice was being conducted in accordance with
generally accepted standards of care.

        That said, we nonetheless are troubled by the fact that
Stanger failed to disclose the status of his medical license when
he prepared his affidavit in support of defendants' motions for
summary judgment.  The very first paragraph of Stanger's
affidavit recites, "I am a physician duly licensed to practice in
the State of New York."  Noticeably absent from both that opening
paragraph and Stanger's affidavit as a whole is any mention of
the fact that, only two months earlier, a one-year stayed
suspension of his medical license had been imposed and that he
was practicing medicine subject to certain terms of probation.
This glaring omission is entirely inconsistent with Stanger's
ethical obligations as a practicing physician and, in our view,
seriously calls into question the medical opinion he has rendered
regarding his diagnosis, care and treatment of decedent.
Additionally, further review of Stanger's affidavit reveals that
the opinion set forth therein was "[b]ased on [Stanger's] review
of the [medical] records in this matter, as well as [his]
personal recollection of the care and treatment rendered to
[decedent]."  In this regard, Stanger acknowledged that he did
not complete his charting of decedent's January 29, 2009 hospital

visit until after he (1) learned that decedent had returned to the emergency department the following day, (2) was advised that decedent had died, and (3) had been questioned by another physician regarding the care and treatment he had provided to decedent the previous day. Under these circumstances, we do not find Stanger's affidavit to be sufficient to satisfy defendants' initial burden on the motions for summary judgment, thereby warranting the denial thereof.

Moreover, even if we were to conclude that Stanger's affidavit was sufficient to discharge defendants' burden in this regard, we would find that plaintiff's proof in opposition was sufficient to raise questions of fact as to whether defendants' diagnosis, care and treatment of decedent deviated from accepted medical practices. Initially, we would agree that the brief and conclusory affidavit tendered by plaintiff's expert offered no insight into the manner in which Stanger's diagnosis, care and treatment of decedent departed from accepted medical practices and, hence, would be insufficient to raise a question of fact (see Longtemps v Oliva, 110 AD3d at 1319; Martino v Miller, 97 AD3d at 1010-1011).[3] That said, plaintiff also tendered Stanger's examination before trial testimony, wherein he acknowledged that the "sudden onset of back pain can be a harbinger of bad stuff," including "aortic aneurysm, aortic dissection, heart attack," and decedent's hospital records reflect "a sudden onset of back discomfort" accompanied by dizziness and a tingling in decedent's legs while he was testifying. Similarly, although Stanger testified that decedent did not display certain indicators of an aortic dissection/aneurysm (hypertension) and that some of decedent's noted symptoms (diarrhea) were "not part of [that] picture," he also testified that nausea, vomiting and numbness or tingling in the legs — all of which decedent did complain of or display — either were or could be indicative of an aortic dissection or

---

[3]  Having previously concluded that plaintiff's motion for reconsideration was properly denied, we would not consider the supplementary affidavit tendered by plaintiff's expert or the attached autopsy report.

aneurysm.  Stanger further testified that a CAT scan, which he did not order (purportedly due to decedent's representation that his back pain had resolved), was the "go-to test" for diagnosing this condition.  Finally, although Stanger's written discharge summary indicated that decedent was "feeling better" after he received fluids and anti-nausea medication and was "ok for discharge," Stanger acknowledged, as noted previously, that he did not complete his charting of decedent's January 29, 2009 hospital visit until after he learned that decedent had returned to the emergency department the following day and died.  Accordingly, even assuming that Stanger's affidavit was sufficient to discharge defendants' burden on the subject motions in the first instance, we nonetheless would find that defendants are not entitled to summary judgment dismissing the complaint.

Peters, P.J., Stein, Rose and Clark, JJ., concur.

ORDERED that the order entered March 27, 2013 is reversed, on the law, with costs, and motions denied.

ORDERED that the order entered July 23, 2013 is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court