Humphrey v Riley (2018 NY Slip Op 05388)





Humphrey v Riley


2018 NY Slip Op 05388


Decided on July 19, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 19, 2018

525764

[*1]DONALD J. HUMPHREY, as Administrator of the Estate of MARY ANN HUMPHREY, Deceased, Appellant,
v
KENNETH D. RILEY et al., Respondents, et al., Defendants.

Calendar Date: May 31, 2018

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Rumsey, JJ.


Rheingold Giuffra Ruffo & Plotkin, LLP, New York City (Sherri L. Plotkin of counsel), for appellant.
Carter, Conboy, Case, Blackmore, Maloney & Laird, PC, Albany (Edward D. Laird Jr. of counsel), for respondents.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from an order of the Supreme Court (Ferreira, J.), entered July 17, 2017 in Albany County, which granted a motion by defendants Kenneth D. Riley and Mary Imogene Bassett Hospital for summary judgment dismissing the complaint against them.
In January 2011, Mary Ann Humphrey (hereinafter decedent) had a Mirena intrauterine device (hereinafter IUD) inserted into her uterus by her gynecologist. On three occasions approximately one year later, decedent presented to defendant Kenneth D. Riley,
her primary care physician, with complaints of a variety of symptoms. On December 23, 2011, at the third visit, decedent's symptoms included nausea, vomiting, diarrhea and a fever and, following a physical examination, Riley's impression was that decedent had a "[f]lu-like syndrome." He prescribed medication to decedent and instructed her to notify him immediately or go to the emergency room if her condition changed or worsened. On December 26, 2011, decedent went to the emergency room at St. Mary's Hospital with symptoms of toxic shock syndrome (hereinafter TSS). She was subsequently airlifted to Albany Medical Center where, following a computerized tomography scan and vaginal examination, her IUD was removed and cultured. A decision to attempt surgical evaluation of a possible pelvic abscess was made and, [*2]during the administration of anesthesia, decedent went into cardiac arrest and died. Her autopsy report and discharge summary indicated that the cause of decedent's death was TSS and multiorgan failure caused by a Group A streptococcal infection.
Plaintiff, decedent's spouse, commenced this action asserting, among other things, claims for medical malpractice and wrongful death against Riley and defendant Mary Imogene Bassett Hospital, his employer, among others. Riley and Mary Imogene Bassett Hospital (hereinafter collectively referred to as defendants) joined issue and then moved for summary judgment dismissing the complaint. Supreme Court granted the motion, and plaintiff now appeals.[FN1]
Defendants met their initial burden of demonstrating that Riley did not depart from accepted standards of medical practice in treating decedent by submitting, among other things, plaintiff's and Riley's deposition testimony, decedent's medical records and an expert affidavit by physician Paul Auwaerter (see Butler v Cayuga Med. Ctr., 158 AD3d 868, 869-874 [2018]; D'Orta v Margaretville Mem. Hosp., 154 AD3d 1229, 1231-1232 [2017]; Webb v Albany Med. Ctr., 151 AD3d 1435, 1436-1437 [2017]). Based on his review of the records, Auwaerter opined that decedent's symptoms at her presentations to Riley did not warrant a gynecological examination or removal of her IUD. According to Auwaerter, decedent's symptoms were "ostensibly demonstrative of a viral process or flu" and Riley's treatment was in accordance with the applicable standard of care. With respect to decedent's visit on December 23, 2011, Auwaerter noted that decedent experienced abdominal pain, but opined that Riley reasonably attributed it to decedent's episodes of diarrhea and vomiting. He also noted that decedent had "no significant rash" at that time and that an insignificant rash is consistent with a viral process. Auwaerter further opined that, because decedent did not present to Riley with focal guarding, rebound, mass or rigidity of her abdomen, and bowel sounds were present, there was no reason for Riley to suspect any acute injury or infection and that further testing was not required. Auwaerter also concluded, to a reasonable degree of medical certainty, that decedent did not meet the diagnostic criteria for TSS during any of her visits to Riley, and that Riley's December 23, 2011 diagnosis of flu-like symptoms was appropriate based on decedent's symptoms and his examination of her.
As defendants met their initial burden of establishing their right to summary judgment, the burden shifted to plaintiff to raise a triable issue of fact by submitting a competent expert medical opinion that was neither conclusory nor speculative (see Butler v Cayuga Med. Ctr., 158 AD3d at 874; D'Orta v Margaretville Mem. Hosp., 154 AD3d at 1233; Longtemps v Olivia, 110 AD3d 1316, 1319 [2013]; Carter v Tana, 68 AD3d 1577, 1580 [2009]). To that end, plaintiff primarily relied on the redacted expert affidavit of a physician who is licensed to practice medicine in Rhode Island and board-certified in family medicine. Plaintiff's expert averred that, in light of decedent's symptoms, Riley departed from accepted practice on December 23, 2011 by diagnosing her with the flu and by failing to perform a pelvic examination. The expert opined that abdominal pain is not generally considered to be a symptom of the flu and that complaints of abdominal pain, nausea, vomiting, fever and diarrhea in female patients mandate that a pelvic [*3]examination be performed. These opinions, however, were conclusory, and the expert failed to provide any factual basis for his opinions (see Butler v Cayuga Med. Ctr., 158 AD3d at 875; Gallagher v Cayuga Med. Ctr., 151 AD3d 1349, 1354 [2017]). Furthermore, although the expert opined that a pelvic examination on December 23, 2011 would have revealed decedent's pelvic infection at a time when it could have been effectively treated, the expert never explained how or why, if a pelvic examination had been performed, material information would have been revealed that would have altered the diagnosis rendered (see Gallagher v Cayuga Med. Ctr., 151 AD3d at 1354; Longstemps v Olivia, 110 AD3d at 1319). Moreover, plaintiff's expert failed to address Auwaerter's opinions that Riley reasonably relied on decedent's maintenance of her gynecological care with her gynecologist, that an insignificant rash is consistent with a viral process or that, although decedent's abdomen was tender, there was no focal guarding, rebound, mass, rigidity or lack of bowel sounds so as to suggest an acute injury or infection (see Keun Young Kim v Lenox Hill Hosp., 156 AD3d 774, 775 [2017]; Tsitrin v New York Community Hosp., 154 AD3d 994, 996-997 [2017]). Because we find that the affidavit of plaintiff's expert was speculative and conclusory, it was insufficient to raise a triable issue of fact (see Butler v Cayuga Med. Ctr., 158 AD3d 868 at 876; Keun Young Kim v Lenox Hill Hosp., 156 AD3d at 775; Tsitrin v New York Community Hosp., 154 AD3d at 996; Gallagher v Cayuga Med. Ctr., 151 AD3d at 1354-1355). Accordingly, Supreme Court properly granted defendants' motion for summary judgment dismissing the complaint against them. Plaintiff's remaining contentions have been examined and found to lack merit.
Garry, P.J., Egan Jr., Mulvey and Rumsey, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Because plaintiff's brief raises no issue with respect to the dismissal of the cause of action for negligent hiring, supervision and retention against Mary Imogene Bassett Hospital, plaintiff has abandoned any arguments with respect thereto (see Matter of Pine v Annucci, 155 AD3d 1201, 1202 [2017], lv denied 31 NY3d 905 [2018]).