Guthier v DiPreta (2025 NY Slip Op 00257)

Guthier v DiPreta

2025 NY Slip Op 00257

Decided on January 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 16, 2025

CV-24-0298
[*1]Sharon Guthier, Respondent,
v
John DiPreta et al., Appellants.

Calendar Date:November 20, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, Ceresia and Powers, JJ.

Heidell, Pittoni, Murphy & Bach, LLP, Albany (Marshall Broad of counsel), for appellants.
Basch & Keegan, LLP, Kingston (Derek J. Spada of counsel), for respondent.

Powers, J.
Appeal from an order of the Supreme Court (Richard J. McNally Jr., J.), entered January 23, 2024 in Rensselaer County, which denied defendants' motion for summary judgment dismissing the complaint.
Defendant John DiPreta is an orthopedic surgeon employed by defendant Capital Region Orthopaedic Associates, P.C. (hereinafter CROA). DiPreta has treated plaintiff since 2009, during which time plaintiff has undergone multiple procedures, including left foot and ankle surgery and two total knee replacements. On December 3, 2018, after years of conservative treatment for plaintiff's right foot and ankle pain, DiPreta operated on plaintiff once again. This procedure required multiple incisions for the placement of hardware and was completed without complication. Plaintiff received a dose of an antibiotic prior to surgery and a second dose within 24 hours following the surgery. On December 13, 2018, plaintiff had her first postoperative appointment, during which DiPreta examined her and documented that her incisions were healing and showed no signs of infection. DiPreta examined plaintiff a second time on December 21, 2018, and indicated that there was no sign of infection but that the incision on the outside of plaintiff's foot displayed signs of maceration. Consequently, DiPreta prescribed plaintiff the antibiotic Bactrim as a prophylactic measure. Despite this, plaintiff was admitted to the hospital on December 26, 2018, for the treatment of an infection at that incision site. Plaintiff remained in the hospital and underwent several additional treatments as a result of the infection, including plastic surgeries.
Plaintiff commenced this medical malpractice action in December 2020 alleging, in relevant part, that DiPreta had deviated from the acceptable standard of care in his treatment of plaintiff, causing her injuries. Following joinder of issue and the further particularization of plaintiff's allegations, defendants moved for summary judgment dismissing the complaint. In support of this motion, defendants provided, among other things, an expert affidavit which opined that DiPreta had not deviated from the standard of care and, even if he had, any deviation did not cause plaintiff's injuries. Defendants also sought dismissal of plaintiff's claims against CROA based upon this conclusion. Plaintiff opposed the motion by providing an affidavit of her own expert and argued that the competing expert affidavits raised questions of fact requiring denial of the motion. Supreme Court found, in relevant part, that there was a triable issue of fact regarding whether DiPreta had deviated from the postoperative standard of care and denied defendants' motion. Defendants appeal.
Because we find that plaintiff's expert affidavit failed to raise a question of fact with respect to the causation element, we reverse and grant defendants' motion. Plaintiff does not claim that defendants did not meet their moving burden; instead, she maintains that she raised a material [*2]question of fact in opposition by providing a competing expert affidavit (see generally Lubrano-Birken v Ellis Hosp., 229 AD3d 873, 875 [3d Dept 2024]; Henderson v Takemoto, 223 AD3d 996, 999 [3d Dept 2024]). In opposition to defendants' summary judgment motion, plaintiff's expert affidavit must not be speculative or conclusory and, for that reason, "should 'address specific assertions made by [defendants'] expert[ ], setting forth an explanation of the reasoning and relying on specifically cited evidence in the record' " (Lubrano-Birken v Ellis Hosp., 229 AD3d at 875, quoting Schwenzfeier v St. Peter's Health Partners, 213 AD3d 1077, 1080 [3d Dept 2023]; see Goldschmidt v Cortland Regional Med. Ctr., Inc., 190 AD3d 1212, 1215 [3d Dept 2021]; Humphrey v Riley, 163 AD3d 1313, 1315 [3d Dept 2018]). Thus, although plaintiff does not contest the adequacy of defendant's submissions, an overview of defendants' expert affidavit is necessary.
In support of their motion for summary judgment, defendants provided the affidavit of Adolph Samuel Flemister Jr., a board-certified orthopedic surgeon. Flemister affirmed that he is familiar with the applicable standard of care, including that related to postoperative care and treatment. Flemister opined that, to a reasonable degree of medical certainty, DiPreta complied with the standard of care throughout his postoperative treatment, and that his actions did not cause plaintiff's infection. According to Flemister, infection is a common risk to any surgical procedure nonindicative of a deviation from the standard of care. The standard of care requires the administration of antibiotics immediately prior to orthopedic surgery to reduce the risk of infection and again postoperatively for approximately 24 hours. It is outside the standard of care to prescribe antibiotics for a prolonged period postoperatively as antibiotic resistance may result. Accordingly, Flemister opined that DiPreta was within the standard of care when he administered one gram of the antibiotic Vancomycin prior to and following surgery. Further, there was no need to prescribe antibiotics during plaintiff's postoperative appointments because she displayed no signs of infection, including no fever or chills, no drainage of pus from the wound, no bad odor emanating from the wound and normal levels of pain or discomfort. In fact, an accurate wound culture would have required opening plaintiff's wound and there was no basis for such an invasive test at that point. Moreover, the results of any tests conducted during the second postoperative appointment would likely not have been received for multiple days due to the Christmas holiday. Thus, it is probable that plaintiff would still have been directed to the hospital on December 26, 2018, even if further testing had been conducted during the previous appointment. Additionally, although tests had not been conducted, it was proper to prescribe the broad-spectrum antibiotic Bactrim as a precautionary measure [*3]because the incision in question appeared slightly inflamed, though not infected. Even so, Flemister opined that the prescription of Bactrim would have been an appropriate treatment had any tests indicated plaintiff had an infection. Thus, Flemister surmised that DiPreta's actions did not cause plaintiff's injuries because plaintiff would have undergone the same treatment regardless of DiPreta's alleged deficiencies.
In response, plaintiff provided the affidavit of Samuel J. Snyder, a board-certified orthopedic surgeon, who opined that DiPreta committed multiple deviations from the acceptable standard of care when treating plaintiff. Snyder described that, although antibiotics are often provided prophylactically prior to surgery, antibiotics may be provided postoperatively as a prophylactic measure based upon the surgeon's "preference and judgment," but are generally not indicated. However, Snyder later opined that plaintiff's health necessitated the prescription of antibiotics postoperatively due to the possible catastrophic effect of an infection at the site of her prosthetic devices. Snyder expected the incision on the outside of plaintiff's foot to be more red and painful because of the nature of the operation and the extensive treatment required at that site. Further, the brown drainage noted during the first postoperative appointment was normal postsurgical resolution of bleeding and no observations at this appointment indicated an infection. Based upon these conclusions, Snyder opined that there was no present need for antibiotics and no deviation from the standard of care in not prescribing same at that time. Yet, Snyder later opined that DiPreta's manual drainage of the fluid from the incision during this appointment and the failure to provide antibiotics at this time, "more likely than not failed to protect [plaintiff]'s surgical site and, more likely than not, permitted the development of a serious surgical site infection" by allowing bacteria to enter and colonize the wound.[FN1] However, regarding the second postoperative appointment on December 21, 2018, Snyder concluded that it was a deviation from the standard of care to not further investigate the signs of infection that were presented by conducting wound cultures and blood studies. Although acknowledging that plaintiff was prescribed an antibiotic at this appointment, Snyder stated that this seemed to be an ineffective treatment based upon plaintiff's subsequent infection. Snyder asserts broadly and without elaboration that DiPreta is "responsible for" the infection that developed and the results of treating same and that "these deviations caused injuries to [plaintiff]."
Even assuming plaintiff raised a material question of fact as to deviation, we nevertheless find that Snyder's affidavit was ineffectual in rebutting defendants' prima facie showing on the element of causation. "General, conclusory allegations of medical malpractice, based on speculation or unsupported by competent [*4]evidence, are insufficient to meet plaintiff's burden and defeat summary judgment" (Longtemps v Oliva, 110 AD3d 1316, 1319 [3d Dept 2013] [internal quotation marks and citations omitted]; see Carter v Tana, 68 AD3d 1577, 1580 [3d Dept 2009]). Snyder did not address Flemister's assertion that DiPreta's failure to order further testing — his supposed departure from the standard of care — did not cause or result in a worsened infection. Nor did Snyder address Flemister's indication that had further tests been ordered, results would have not been received for several days and, therefore, DiPreta would have still prescribed Bactrim as he did. Finally, Snyder did not explain why Bactrim was an inappropriate drug to prescribe beyond concluding that it seemed ineffective in treating the infection, a conclusion made with the benefit of hindsight (see Butler v Cayuga Med. Ctr., 158 AD3d 868, 876 [3d Dept 2018]). Instead, Snyder simply declares in a conclusory fashion that DiPreta's actions caused plaintiff's injuries. Based upon these failings, Snyder's affidavit was insufficient in raising a triable issue of fact on the issue of causation (see Avgi v Policha, 232 AD3d 838, 840 [2d Dept 2024]; Longtemps v Oliva, 110 AD3d at 1319; Hoffman v Pelletier, 6 AD3d 889, 891 [3d Dept 2004]; cf. Ballek v Aldana-Bernier, 100 AD3d 811, 814 [2d Dept 2012]; compare Sovocool v Cortland Regional Med. Ctr., 218 AD3d 947, 953 [3d Dept 2023]; Doucett v Strominger, 112 AD3d 1030, 1033 [3d Dept 2013]). Accordingly, we find that Supreme Court erred in denying defendants' motion for summary judgment dismissing the complaint.[FN2]
Clark, J.P., Lynch, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, defendants' motion for summary judgment granted and complaint dismissed.

Footnotes

Footnote 1: We note that Snyder's opinion in this respect is self-contradictory (see Samer v Desai, 179 AD3d 860, 863 [2d Dept 2020]; Barrocales v New York Methodist Hosp., 122 AD3d 648, 649-650 [2d Dept 2014]).

Footnote 2: As plaintiff's claims against CROA sound in vicarious liability, dismissal of the claims against DiPreta require dismissal of the claims against CROA.