OPINION OF THE COURT
Smith, J.
On this appeal, plaintiffs ask this Court to extend the continuous treatment doctrine from a single physician or related physicians to continuous treatment by an institution. Because the course of the infant’s treatment was not truly continuous, we reverse without reaching the question of whether continuous treatment by an institution is a cognizable theory excusing the untimely filing of a notice of claim.
Infant plaintiff was born on May 21, 1985 at North Central Bronx Hospital (North Central), one of the hospitals owned and operated by defendant Health and Hospitals Corporation (HHC). Medical records indicate plaintiff was essentially “born lifeless,” and that at birth, he suffered from respiratory failure, which allegedly caused brain damage affecting learning and speech development, and Erb’s Palsy in his left arm. Plaintiff was intubated and brought to the special care nursery/neonatal intensive care unit where he remained throughout his 10-day hospitalization.
After plaintiffs discharge, he was treated by three different clinics: (a) Montefiore Hospital Medical Center (Montefiore), a facility unrelated to North Central, for his cardiac condition; (b) North Central’s Pediatric Rehabilitation Medicine Clinic for his Erb’s Palsy; and (c) North Central’s Pediatric Clinic for routine health care. In September 1988, plaintiffs mother told the North Central Pediatric Clinic that she intended to relocate to Miami, Florida. The clinic advised plaintiffs mother to seek medical attention from Miami Children’s Hospital and that North Central would forward his medical records to the new setting upon request. The clinic also scheduled an appointment for one month later, which plaintiff did not keep. On December 16, 1988, however, before moving to Miami, plaintiff visited the North Central Pediatric Clinic for routine health care and ap *266 peared again on March 10, 1989 following exposure to tuberculosis.
Plaintiff next appeared at North Central for routine health care nine months later, in January 1990, by which time he and his mother had moved back to New York. After failing to appear for a speech evaluation lesson on May 14, 1990, plaintiff visited North Central on May 18, 1990 for his kindergarten physical examination and for immunizations. He next appeared at North Central in July 1990 for a scalp infection. Plaintiff failed to appear for a scheduled appointment in August 1990 and was not seen at North Central again until one year later, in July 1991, when — after three missed appointments — his initial speech-language evaluation was finally held. Plaintiff thereafter continued to visit the pediatric clinic at North Central for routine health care.
On October 18, 1990, plaintiffs filed a notice of claim on behalf of the infant plaintiff and his mother, alleging negligence and medical malpractice in the prenatal care and postnatal course of treatment of her son. Plaintiffs served the complaint on November 13, 1991, more specifically directing their allegations toward the alleged obstetrical negligence during delivery.
In August 1999, HHC moved for summary judgment dismissing the complaint on the ground that plaintiffs failed to serve a notice of claim within 90 days of the alleged malpractice, a condition precedent to maintaining the action against HHC (General Municipal Law § 50-e; McKinney’s Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20 (2); L 1969, ch 1016, § 1, as amended]). Plaintiffs opposed, arguing in part that the notice of claim, although served five years after the alleged malpractice, was nevertheless timely because it was served while plaintiff was undergoing continuous treatment at North Central for injuries sustained during delivery.
Although finding the continuous treatment doctrine unavailing to plaintiffs, Supreme Court denied defendant’s motion on the ground that HHC was equitably estopped from raising untimeliness of the notice of claim because it had waited until the 10-year infancy limitations period had expired before bringing the motion. A divided Appellate Division affirmed, concluding that the limitations period could be extended under the continuous treatment doctrine if the infant plaintiff could show he had been engaged in a continuous course of treatment at the hospital for his birth injuries until the notice of claim was *267 filed. The majority opined that patients should not have to interrupt medical treatment of an injury and undermine the physician-patient relationship in order to commence a medical malpractice action before the statute of limitations expires.
In dissent, two Justices would have granted summary judgment for defendant, concluding that plaintiffs failed to prove an “agency or other relevant relationship” (285 AD2d 374, 377) that would permit imputation of treatment from the nonnegligent health care professionals to the allegedly negligent ones. The dissent also would have rejected the continuous-treatment-by-an-institution theory in general, and particularly as applied here. Finally, the dissenters concluded that, factually, the continuous treatment doctrine was inapplicable because infant plaintiff’s treatment was interrupted at the time of plaintiff’s last pre-Florida visit to North Central and plaintiff mother failed to file the notice of claim within 90 days of this last visit. We now reverse.
All actions sounding in medical malpractice brought against HHC or North Central are subject to the notice of claim provision, and the notice of claim must be filed within 90 days after the claim arises (General Municipal Law § 50-e; Ganess v City of New York, 85 NY2d 733, 735 [1995]). Generally, a medical malpractice action accrues on the date of the alleged wrongful act (Nykorchuck v Henriques, 78 NY2d 255, 258-259 [1991]). The doctrine of continuous treatment, however, may toll the 90-day period within which a notice of claim must be filed under General Municipal Law § 50-e (see Davis v City of New York, 38 NY2d 257, 259 [1975]). The toll applies when continuous treatment is sought “for the same illness, injury or condition which gave rise to the said act, omission or failure” originally complained of (CPLR 214-a; McDermott v Torre, 56 NY2d 399, 407; Borgia v City of New York, 12 NY2d 151, 155 [1962]). As this Court has stated:
“The ‘continuing trust and confidence’ which underlies the ‘continuous treatment doctrine’ * * * does not necessarily come to an end upon a patient’s last personal visit with his or her physician * * * when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past *268 * * *. Thus, a patient remains under the ‘continuous treatment or care’ of a physician between the time of the last visit and the next scheduled one where the latter’s purpose is to administer ongoing corrective efforts for the same or a related condition” (Richardson v Orentreich, 64 NY2d 896, 898-899 [1985] [internal citations omitted]).
Essential to the application of the continuous treatment doctrine is “a course of treatment established with respect to the condition that gives rise to the lawsuit” (Nykorchuck, 78 NY2d at 258-259). Routine examination of a seemingly healthy patient, or visits concerning matters unrelated to the condition at issue giving rise to the claim, are insufficient to invoke the benefit of the doctrine.
Here, although plaintiffs made numerous appointments to treat the child’s* Erb’s Palsy and other alleged birth injuries, plaintiffs often failed to keep these scheduled meetings. Moreover, medical records indicate that plaintiffs intended to relocate to Florida in September 1998 and that North Central advised the mother to seek further medical care at Miami Children’s Hospital and informed her of how to obtain prior treating records. Both parties objectively manifested an understanding that treatment of the child would not continue once he moved to Florida. Significantly, the mother did not indicate at that time that she intended her child to continue treatment at North Central, and except for a March 1989 visit for tuberculosis exposure, the child was not examined again at North Central until January 1990, approximately 16 months later. Plaintiffs conclusory assertion in her deposition that she intended her child to continue treatment at North Central after they moved to Florida and that the child appeared for regularly scheduled appointments is insufficient, as a matter of law, to rebut the record evidence to the contrary (see Ganess v City of New York, 85 NY2d 733, 736). Consequently, plaintiffs cannot invoke the continuous treatment doctrine.
Accordingly, the order of the Appellate Division should be reversed, with costs, the complaint dismissed and the certified question answered in the negative.
Chief Judge Kaye and Judges Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
*269 Order reversed, with costs, defendant’s motion for summary judgment dismissing the complaint granted and certified question answered in the negative.

 The child also was treated irregularly by non-HHC professionals for his Erb’s Palsy.