██ MARK AULITA, Respondent, v THEODORE T. CHANG et al., Appellants. [845 NYS2d 828]—

Carpinello, J. Appeal from an order of the Supreme Court (Teresi, J.), entered December 28, 2006 in Albany County, which denied defendants' motion for summary judgment dismissing the complaint.

In November 1999, plaintiff consulted with defendant Capital District Urological Surgeons, LLP (hereinafter the Urology Group) complaining of back, bladder, testicular and abdominal pain. Although plaintiff was diagnosed with an umbilical hernia by physician Charles Schwartz at that time, Schwartz indicated that he could "not find any urologic problems" and plaintiff would only be seen "on an as-needed basis if we identify any urologic problems." No further appointments related to plaintiff's urologic complaints were scheduled.

According to plaintiff, his original symptoms continued despite the hernia surgery, however, following his complaints of right flank pain to his primary care physician, he was again referred to the Urology Group. On May 21, 2001, plaintiff was examined by physician Stuart Rosenberg and a CAT scan of plaintiff's abdomen thereafter revealed a mass indicative of renal cell carcinoma. The Urology Group recommended that

plaintiff's right kidney be surgically removed, i.e., a "right radical nephrectomy." Plaintiff then met with defendant Theodore T. Chang, a urologic surgeon with the practice. After the surgical options were explained to plaintiff, he elected to have a laparoscopic nephrectomy as opposed to open surgery. Chang and defendant Michael E. Moran performed the laparoscopic procedure on July 12, 2001.

Plaintiff returned to the Urology Group for a postoperative visit on July 19, 2001 and for a six-month checkup on January 14, 2002. CAT scans performed during this period were negative. During the January 2002 visit, plaintiff inquired about a vasectomy, which was later performed by another physician within the Urology Group on March 25, 2002. Plaintiff was scheduled for another postoperative checkup regarding his nephrectomy in March 2002, but he canceled the appointment due to a conflict and missed the rescheduled appointments on June 21, 2002 and July 18, 2002.

Subsequently, plaintiff's new primary care physician referred him to oncologist Stephen Hillinger for a consultation. Plaintiff met with Hillinger on June 27, 2003. In his report of that examination, which was copied to Chang, Hillinger noted that plaintiff appeared to be "doing well and the likelihood of a cure is excellent." Hillinger ordered some tests, including an ultrasound. The October 27, 2003 ultrasound showed a new mass on plaintiff's "right renal fossa" and he was thereafter scheduled for CAT and PET scans. The notes and results of these tests were sent to both Hillinger and Chang for review.

Plaintiff was next seen by Chang for a physical examination on November 10, 2003. Chang's office notes indicate that he received the results of plaintiff's tests and his impression was that plaintiff was suffering a "recurrence of renal cell carcinoma." Chang discussed the results with plaintiff and, although his notes indicate that he felt unsure as to whether further surgery was advisable, he would "bring this situation up at the Tumor Board next week and get back to [plaintiff] after that discussion." Subsequently, Chang's notes of a telephone call with plaintiff on December 1, 2003 indicate that he informed defendant that the board's consensus was a recommendation of surgery followed by radiation and chemotherapy treatments. Plaintiff informed Chang that he was leaning towards an alternative treatment, but would keep the Urology Group "up-to-date on his thinking in progress."

Plaintiff commenced this action against defendants in April 2005, alleging medical malpractice. The complaint alleged three causes of action all stemming from the July 2001 operation.

However, in his bill of particulars, plaintiff also alleged that the Urology Group committed malpractice by failing to diagnose his kidney cancer in 1999. Following joinder of issue, defendants moved for summary judgment dismissing the complaint as barred by the statute of limitations. Plaintiff opposed the motion, maintaining that the statute of limitations was tolled based upon the continuing treatment doctrine. Supreme Court denied defendants' motion, prompting this appeal.

Initially, defendants argue that plaintiff's claims alleging malpractice stemming from the 2001 nephrectomy should have been dismissed as untimely because plaintiff commenced this action more than 2½ years after that surgery (*see* CPLR 214-a; *see also Cox v Kingsboro Med. Group*, 88 NY2d 904, 906 [1996]; *Waring v Kingston Diagnostic Radiology Ctr.*, 13 AD3d 1024, 1025 [2004]). Furthermore, they contend that Supreme Court erred in concluding that there were questions of fact as to whether the statute of limitations was tolled because plaintiff provided proof of continuous treatment by defendants from the time of his 2001 surgery until approximately November 2003. Specifically, while defendants do not dispute that plaintiff began treatment with them when his renal carcinoma was discovered after his May 21, 2001 office visit, they maintain that treatment ended, at the latest, on July 18, 2002, when plaintiff missed a followup appointment related to his nephrectomy and did not reschedule. Plaintiff was not seen by Chang again until November 2003 and, therefore, defendants contend that any ongoing course of treatment was terminated by this 16-month gap.

Notably, "[t]he continuous treatment doctrine serves to toll the [s]tatute of [l]imitations during a patient's course of treatment with his or her physician" (*Casale v Hena*, 270 AD2d 680, 682 [2000]) so long as the treatment sought is continuous and is " 'for the same illness, injury or condition which gave rise to the said act, omission or failure' originally complained of" (*Plummer v New York City Health & Hosps. Corp.*, 98 NY2d 263, 267 [2002], quoting CPLR 214-a; *see Cox v Kingsboro Med. Group*, 88 NY2d at 906; *Labshere v Petroski*, 32 AD3d 645, 646 [2006]; *Waring v Kingston Diagnostic Radiology Ctr.*, 13 AD3d at 1025; *Lemmerman v Delmar Dental*, 3 AD3d 771, 772 [2004]). While this Court has held that treatment does not necessarily terminate at a patient's last visit, further treatment by both the patient and doctor must be contemplated (*see Waring v Kingston Diagnostic Radiology Ctr.*, 13 AD3d at 1026; *Casale v Hena*, 270 AD2d at 682).

Here, viewing the evidence in a light most favorable to

plaintiff, the nonmoving party (*see Labshere v Petroski*, 32 AD3d at 647), we find that Supreme Court did not err in concluding that a question of fact exists with respect to the applicability of the continuous treatment doctrine in relation to plaintiff's claims regarding his 2001 surgery. Regardless of the 16-month gap in treatment and plaintiff's referral to an oncologist for consultation, plaintiff presented issues of fact which support the conclusion that plaintiff never expressed an intention to abandon treatment with defendants and they considered themselves to be actively involved in his care. Specifically, the record shows that plaintiff had scheduled appointments with defendants during that time period, even if he did not attend them. As for plaintiff's treatment with Hillinger, although continuous treatment may be terminated when a patient seeks treatment from a different physician, on the facts alleged, plaintiff sufficiently set forth proof suggesting that he did not abandon his treatment with Chang and, instead, intended Chang and Hillinger to work cooperatively (*see Rudolph v Jerry Lynn, D.D.S., P.C.*, 16 AD3d 261, 262-263 [2005]). For example, not only were Hillinger's medical notes copied to Chang, plaintiff stated in his deposition that the results of the ultrasound ordered by Hillinger were sent directly to Chang for review because "[he] was my doctor." Additionally, Chang's office notes of his November 2003 examination of plaintiff indicated that he had been monitoring plaintiff's progress, specifically discussed the implications of the latest test results with plaintiff and planned to actively pursue the question of treatment options for him in light of the recurrence of his cancer. Chang's office notes from his December 1, 2003 conversation with plaintiff indicate that he intended to continue monitoring and treating plaintiff in the future. Given this proof in the record, we find no basis to disturb Supreme Court's conclusion that questions of fact justify the denial of defendants' summary judgment motion with respect to claims emanating from the 2001 surgery.

Turning to that part of defendants' summary judgment motion that sought dismissal of plaintiff's 1999 failure to diagnose claims,* we reach a different result and conclude that these claims are, in fact, time-barred. There is nothing in the record to support an inference that plaintiff's treatment for renal can-

---

* We note that although defendants argue that the 1999 claims should be dismissed both on timeliness grounds and the fact that plaintiff failed to plead them in his complaint, only the statute of limitations issue was included in defendants' summary judgment motion and, therefore, was preserved for our review.

cer commenced with his 1999 appointment with Schwartz and his later interactions with defendants were a continuation of that treatment. No follow-up appointments were contemplated in 1999, a fact confirmed by both Schwartz's office notes of the appointment as well as plaintiff's own deposition testimony. As noted above, while there is no question that "[a] patient's last visit may not necessarily terminate treatment, . . . it must be demonstrated that further treatment is explicitly anticipated by both the patient and physician" (*Casale v Hena*, 270 AD2d at 682). Since the proof in the record establishes that there was no continuing treatment contemplated following plaintiff's examination by Schwartz in 1999, his later treatment in 2001 by the Urology Group could only be considered a "resumption" of treatment as opposed to a continuation of his prior care (*see id.*; *Fox v Glens Falls Hosp.*, 129 AD2d 955, 957 [1987]). Accordingly, there is no basis for the statute of limitations to be tolled with respect to plaintiff's failure to diagnose allegations and we modify the order to the limited extent of dismissing those claims as time-barred.

The remaining arguments advanced by defendant have been examined and found to be unpersuasive.

Mugglin, Rose and Lahtinen, JJ., concur; Cardona, P.J., not taking part. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied that part of defendants' motion seeking dismissal of the claims of malpractice related to treatment received in November 1999; said claims dismissed; and, as so modified, affirmed.