Stein, J.
Cross appeals from an order of the Supreme Court (Zwack, J.), entered January 10, 2012 in Rensselaer County, which partially granted defendants’ motion for summary judgment dismissing the complaint.
Plaintiff (born in 1985) was a patient of defendant Pamela C. Walders—a pediatrician employed by defendant Troy Pediatrics, LLP—from the time of plaintiffs birth until her 11-year-old annual checkup in September 1996. According to plaintiff’s mother, at the time plaintiff turned three years old, she grew concerned about the development of plaintiff’s right foot. In particular, plaintiffs feet were not the same size and her right arch appeared to be higher than the left. Plaintiff’s mother claims that the deformity of plaintiffs right foot and other related symptoms worsened as plaintiff got older. Sometime after plaintiffs last annual checkup with Walders in September 1996, plaintiffs mother changed to pediatrician Patricia Jolie. During Jolie’s first examination of plaintiff in 1997, she observed plaintiffs right foot and referred her to a podiatrist. As a result of his examination, the podiatrist referred plaintiff to a pediatric neurologist, who ultimately diagnosed plaintiff with a tethered spine, a condition that caused, among other things, the deformities in her right foot, and required plaintiff to undergo multiple surgeries.
On December 23, 2005, plaintiff commenced this medical malpractice action and alleged, among other things, that Walders’ failure to refer plaintiff to a specialist deviated from the ac *1189 cepted standard of care and that plaintiff was injured as a result of the delayed diagnosis and treatment of her condition. In their answer to the complaint, defendants asserted various affirmative defenses including, as relevant here, that the claims were time-barred. Following discovery, defendants moved for summary judgment dismissing the complaint on the ground that Walders did not deviate from the accepted standard of care and, alternatively, that the claims were time-barred. Supreme Court partially granted defendants’ motion by dismissing as time-barred all claims that accrued more than 10 years prior to the commencement of the action. As to the remaining claims, the court found that triable issues of fact existed regarding whether Walders departed from the accepted standard of care. These cross appeals ensued and we affirm.
Turning first to plaintiffs appeal, Supreme Court found that the continuous treatment doctrine did not apply and, therefore, that any claims that arose prior to December 23, 1995 were untimely, as such claims were barred by the 2V2-year statute of limitations and were outside the 10-year maximum infancy toll (see CPLR 208, 214-a; Cahill v Lat, 39 AD3d 1013, 1014 [2007]). Thus, the first issue before us is whether Supreme Court erred in determining that the continuous treatment doctrine did not apply, in which case all of plaintiffs claims would be timely.
The continuous treatment doctrine serves to toll the limitations period during a patient’s course of treatment with his or her physician (see Simons v Bassett Health Care, 73 AD3d 1252, 1254 [2010]; Aulita v Chang, 44 AD3d 1206, 1208 [2007]). “Essential to the application of the continuous treatment doctrine is ‘a course of treatment established with respect to the condition that gives rise to the lawsuit’ ” (Plummer v New York City Health & Hosps. Corp., 98 NY2d 263, 268 [2002], quoting Nykorchuck v Henriques, 78 NY2d 255, 258-259 [1991]). Significantly, a failure to establish a course of treatment is not a course of treatment (see Nykorchuck v Henriques, 78 NY2d at 259; Baptiste v Harding-Marin, 88 AD3d 752, 753-754 [2011], lv denied 19 NY3d 808 [2012]; Johanson v Sullivan, 68 AD3d 1303, 1304-1305 [2009]).
In support of their motion, defendants argued that Walders never treated plaintiff for any condition related to her foot, and proffered, among other things, plaintiffs medical records, the deposition testimony of Walders, plaintiff and her parents, as well as an affidavit from defendants’ expert, a board-certified pediatrician. Notably, plaintiff’s medical records, which document the treatment provided by Walders, do not reveal that Walders diagnosed any condition or provided any treatment re *1190 lated to plaintiffs foot. In fact, the only remotely related entry appearing in such records is a notation in 1989 that merely indicates “arches good.”
In opposition to the motion, plaintiff claimed that, up until she last saw Walders in 1996, Walders had continuously treated her for a condition related to her foot. To support this contention, plaintiff relied upon, among other things, her mother’s affidavit alleging that she first raised concerns with Walders about plaintiffs right foot at plaintiffs three-year-old annual checkup and that she repeated her concerns each year.[1] Plaintiffs mother avers that Walders observed plaintiffs foot, high arch and gait at these appointments, and always responded that there was nothing to worry about and that plaintiff would grow out of the condition. We are unpersuaded by plaintiff’s claims that the concerns raised by her mother to Walders during her annual visits were evidence of treatment of her foot condition by Walders. A “course of treatment speaks to affirmative and ongoing conduct by the physician” which is recognized as such by both the patient and physician (Gomez v Katz, 61 AD3d 108, 112 [2009] [internal quotation marks omitted]). Notably, a “[r]outine examination of a seemingly healthy patient, or visits concerning matters unrelated to the condition at issue giving rise to the claim, are insufficient to invoke the benefit of the [continuous treatment] doctrine” (Plummer v New York City Health & Hosps. Corp., 98 NY2d at 268).
Here, the record is devoid of any evidence that would support a finding that Walders provided affirmative treatment to plaintiff for a condition related to her foot and Walders’ failure to diagnose or treat the condition in response to the concerns of plaintiffs mother does not, by itself, establish an ongoing course of treatment (see Nykorchuck v Henriques, 78 NY2d at 259; Waring v Kingston Diagnostic Radiology Ctr., 13 AD3d 1024, 1026 [2004]). The record does not reflect that Walders ever indicated that she would monitor a condition related to plaintiffs foot, nor has plaintiffs mother asserted that Walders assured her that she would do so. Moreover, when plaintiff was nine years old and was experiencing foot pain, her parents took her to see orthopedic surgeon Robert Heineman.[2] Heineman *1191 thereafter sent a report to Walders indicating, among other things, that a physical examination showed that the arch of plaintiffs right foot was “slightly higher” than the left and that it had a higher and greater “dorsal prominence of the [first] metatarsal tarsal joint.” Heineman also noted that he would “follow [plaintiff] with interest,” suggesting that he would monitor the condition. Walders never discussed Heineman’s report or examination with plaintiffs parents. Under these circumstances, Supreme Court properly concluded that the continuous treatment doctrine did not apply and, accordingly, that all claims occurring more than 10 years prior to the commencement of the action were untimely.
Turning to the cross appeal, we also agree with Supreme Court that, as to the claims that remain, questions of fact exist regarding whether Walders deviated from the accepted standard of care during the time period from December 23, 1995 until she last treated plaintiff in 1996. Plaintiff alleges that defendants departed from the standard of care by, among other things, failing to recognize the symptoms of her condition and refer her to a specialist. Defendants’ expert opined that Walders comported with accepted standards of pediatric care in effect at the time as none of plaintiffs symptoms would have prompted a reasonably prudent pediatrician to suspect the presence of a tethered spine or other neurological condition, particularly considering that most of the symptoms of tethered spine syndrome were not present.[3] Defendants’ expert further concluded that nothing in plaintiff’s presentation to Walders would have caused a reasonably prudent pediatrician to refer plaintiff to a specialist or to further investigate plaintiffs foot. With this evidence, defendants met their burden of establishing their prima facie entitlement to judgment in their favor as a matter of law, thus shifting the burden to plaintiff to demonstrate a triable question of fact (see Martino v Miller, 97 AD3d 1009, 1010 [2012]; Derusha v Sellig, 92 AD3d 1193, 1194 [2012]; Plourd v Sidoti, 69 AD3d 1038, 1039 [2010]; Menard v Feinberg, 60 AD3d 1135, 1137 [2009]).
Plaintiffs expert, also a board-certified pediatrician, reviewed plaintiff’s medical records and the deposition testimony and opined that the various symptoms exhibited by plaintiff should have caused Walders to refer her for a neurological consultation *1192 and that the failure to make such a referral was a deviation from acceptable standards of pediatric care. While defendants claim that this expert failed to specify any deviation from the last annual checkup—the only checkup that would fall within the timely claim—we cannot agree. In fact, plaintiffs expert specifically refers to a notation made by Walders correlating to the September 1996 examination in which she indicated that plaintiffs extremities were within normal limits. Plaintiffs expert opines that, because her abnormality was significant and obvious, so much so that it had been noticed by Heineman, Walders should have referred her to a neurologist at that time. The expert also noted that Jolie’s first examination of plaintiff resulted in a referral to a podiatrist, which then led to the neurological consultation. Viewing the evidence in a light most favorable to plaintiff, we find that the affidavit of plaintiffs expert was sufficient to demonstrate the existence of triable issues of fact as to whether Walders departed from the appropriate standard of care, precluding summary judgment to defendants with respect to those claims that are timely (see Derusha v Sellig, 92 AD3d at 1194; Hickey v Arnot-Ogden Med. Ctr., 79 AD3d 1400, 1401 [2010]).
Rose, J.P, Lahtinen and Egan Jr., JJ., concur.
Ordered that the order is affirmed, without costs.

. Walders disputes the assertion that plaintiffs mother had expressed such concerns at each annual visit.

. The record is unclear as to whether Walders referred plaintiff to Heine-man or whether plaintiffs parents initiated the contact with him. However, even assuming that a question of fact exists as to whether Walders referred plaintiff to Heineman, plaintiff does not argue that this, alone, would be suf *1191 ficient to establish a course of treatment by Walders with respect to plaintiff s foot.

. Symptoms for tethered spine also include abnormalities of the skin on the back, bowel or bladder dysfunction, back pain, loss of sensation or weakness in the lower extremities and walking difficulties.