*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 16, 2015                    520235
_____

FRANK H. FULLER JR., Individually
    and as Administrator of the
    Estate of JOYCE L. FULLER,
    Deceased,
                        Respondent-
                        Appellant,

        v                                       MEMORANDUM AND ORDER

DEBRA M. ABERDALE et al.,
                        Appellants-
                        Respondents,
                        et al.,
                        Defendants.

_____


Calendar Date:   June 5, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____


        Carter, Conboy, Case, Blackmore, Maloney & Laird, PC,
Albany (William D. Yoquinto of counsel), for Debra M. Aberdale
and others, appellants-respondents.

        Thorn Gershon Tymann & Bonanni, LLP, Albany (Erin Mead of
counsel), for Richard MacDowell, appellant-respondent.

        Mills Law Firm, LLP, Clifton Park (Christopher K. Mills of
counsel), for Frank H. Fuller Jr., respondent-appellant.

        Maguire Cardona, PC, Albany (Alicia M. Dodge of counsel),
for Richard Clift and another, appellants-respondents.

_____

Lynch, J.

Cross appeals (1) from an order of the Supreme Court (Connolly, J.), entered March 11, 2014 in Albany County, which, among other things, granted plaintiff's application to file revised expert affidavits, and (2) from an order of said court, entered August 6, 2014 in Albany County, which, among other things, partially denied certain defendants' motions for summary judgment dismissing the amended complaint against them.

This medical malpractice action arises out of the medical care provided to Joyce L. Fuller (hereinafter decedent), who was diagnosed with stage IV rectal cancer in September 2008 and passed away in April 2010 at the age of 47. Plaintiff, decedent's spouse, commenced this action in November 2010, raising the core claim that certain medical professionals who treated her from 2006 through 2008 failed to timely diagnose decedent's cancer, depriving her of an opportunity for survival (see Schaub v Cooper, 34 AD3d 268, 270 [2006]; Provost v Hassam, 256 AD2d 875, 878-879 [1998]). Following the completion of discovery, several defendants moved for summary judgment dismissing the complaint. Initially, by order entered in March 2014, Supreme Court determined to accept untimely expert opposition affidavits submitted by plaintiff. By order entered in August 2014, the court granted the motions of defendant Richard Clift, an internist and gastroenterologist, and his employer, defendant Albany Gastroenterology Consultants, P.C. (hereinafter AGC), and dismissed the complaint against them as untimely in part and for lack of causation. The court also granted the motion of defendant Roy Fruiterman, who was employed by defendant Community Care Physicians, P.C. (hereinafter CCP), dismissing the complaint against him for lack of causation. With respect to defendants Debra M. Aberdale, Jeffrey Henderson and Richard MacDowell, who also were employed by CCP during the relevant time period, the court granted their motions only to the extent of treatment provided during 2008, but left intact the claim pertaining to treatment provided in 2007. Aberdale, Henderson, Fruiterman, CCP, MacDowell, Clift and AGC appeal from the March 2014 order, and plaintiff cross-appeals from that order. Aberdale, Henderson, CCP and MacDowell also appeal from the August 2014 order, and plaintiff cross-appeals therefrom.

Initially, we find that Supreme Court did not abuse its discretion in considering plaintiff's untimely expert affidavits. Supreme Court, at plaintiff's request, extended the return date of moving defendants' motions to December 6, 2013, with plaintiff's responding papers due November 27, 2013. Plaintiff submitted unsigned copies of three expert affidavits on November 27, 2013. By letter dated December 4, 2013, plaintiff requested permission to substitute the executed affidavit of his general surgery expert for the previous unsigned affidavit. Several of the moving defendants objected, pointing out that the affidavit had been modified. By letter dated December 6, 2013, plaintiff's counsel explained that there was a delay in receiving the signed affidavits from his experts and that the changes made by the expert were unanticipated. In addition, plaintiff further submitted a signed version of his gastroenterology expert's affidavit, noting that it too had been unexpectedly modified. On December 9, 2013, plaintiff submitted a signed copy of his hematology expert's affidavit. Original affidavits from all three experts were submitted on December 17, 2013. Following a conference on February 7, 2014, Supreme Court determined to accept the affidavits on condition that plaintiff's counsel pay $1,000 to each defense firm.

In an instance, as here, where a party submits unsworn affidavits in opposition to a motion, and offers the late substitute of signed affidavits, the decision whether to accept the late submission falls within the trial court's discretion (see Fleck v Calabro, 268 AD2d 738, 738 [2000]). In our view, plaintiff's counsel's excuse in failing to timely obtain and submit signed affidavits from his three experts essentially amounted to law office failure (see Associates First Capital v Crabill, 51 AD3d 1186, 1187-1188 [2008], lv denied 11 NY3d 702 [2008]). Moreover, counsel's failure to inform defendants up front that the redacted copies served on November 27, 2013 were not actually signed was misleading. Nonetheless, plaintiff's counsel readily acknowledged that he was unaware that two of the experts altered the language in their signed affidavits, the delay here was minimal and defendants were all given an opportunity to further respond to the revised expert affidavits. Given our preference for resolving cases on the merits, we find that Supreme Court reasonably fashioned a remedy to accept the

unorthodox filing, while at the same time imposing a monetary sanction commensurate with the disruption caused by plaintiff's counsel (see Rosenblatt v New York City Tr. Auth., 122 AD3d 410, 410-411 [2014]; Wilcox v Newark Val. Cent. Sch. Dist., 107 AD3d 1127, 1130-1131 [2013]; Associates First Capital v Crabill, 51 AD3d at 1188; Gokey v DeCicco, 24 AD3d 860, 862 [2005]; Indrunas v Escher Constr. Corp., 277 AD2d 28, 28-29 [2000]).

Turning to plaintiff's medical malpractice claims, the burden in a medical malpractice action is to establish both a deviation from accepted practice and that the deviation was a proximate cause of the injury (see Suib v Keller, 6 AD3d 805, 806 [2004]).  On a summary judgment motion, a defendant is required to establish through competent evidence "either that there was no departure from accepted standards of practice in [the] plaintiff's treatment or that any such deviation did not injure [the] plaintiff" (Rivera v Albany Med. Ctr. Hosp., 119 AD3d 1135, 1137 [2014]).  This burden may be satisfied through a "physician's affidavit or affirmation describing the facts in specific detail and opining that the care provided did not deviate from the applicable standard of care" (Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d 1283, 1285 [2014].

Here, the record shows that decedent first sought treatment from AGC and Clift in January 2006 for symptoms of dyspepsia and upper abdominal discomfort.  In view of decedent's long history of symptoms, including abdominal pain and heartburn, Clift recommended an endoscopy.  The endoscopy was performed in February 2006 and decedent was diagnosed with having non-erosive reflux disease.  Decedent was advised to schedule a follow-up appointment in six months.  While the record indicates that Clift's office sent a reminder notice in August 2006, decedent did not treat with Clift again until July 2008.

As relevant to this action, decedent's course of treatment with Aberdale, Henderson, MacDowell and CCP (hereinafter collectively referred to as the CCP defendants), began on October 12, 2007 when decedent, who went to her primary care provider complaining of upper abdominal and stomach pain, constipation and hemorrhoids, was examined by Aberdale, a nurse practitioner. Aberdale performed an abdominal and external rectal examination

of decedent, ordered blood work and an ultrasound to assess the gallbladder, the results of which were described as normal or unremarkable, and instructed decedent to go to the emergency room if her pain continued or worsened.  Later that evening, decedent did go to the emergency room with complaints of abdominal pain.  On October 24, 2007, decedent was examined by Henderson, an internist, for complaints of epigastric pain.  Henderson, in turn, referred decedent to MacDowell, a surgeon.  When decedent saw MacDowell on October 29, 2007, she complained of abdominal pain, nausea and bloating.  MacDowell ordered a gallbladder test that produced normal, albeit not ideal, results.  Nonetheless, in view of decedent's symptoms and a family history showing that both her mother and sister had their gallbladders removed, MacDowell surgically removed decedent's gallbladder on November 6, 2007.  Decedent followed up with MacDowell on November 21, 2007, and reported that her pain had subsided, but that she was experiencing pain and "early satiety."  On November 27, 2007, decedent again sought treatment from Henderson, who performed an external rectal examination to confirm the presence of a hemorrhoid.  At her final visit with MacDowell on January 9, 2008, decedent was still reporting "digestive problems" and pain.  According to MacDowell, these were normal postoperative symptoms.

In July 2008, after she returned to Clift upon a referral by Fruiterman, Clift diagnosed decedent with diverticulitis, prescribed a course of antibiotics and recommended that she undergo a colonoscopy once she finished the medication.  When decedent saw Clift again on August 15, 2008 with symptoms of rectal bleeding, he scheduled the colonoscopy, which was performed on September 16, 2008.  The procedure revealed a rectal mass subsequently determined to be malignant, and later testing revealed that the cancer had metastasized to decedent's liver and a lymph node.  Radiation and chemotherapy treatment were pursued with limited success.

Plaintiff maintains that AGC, Clift and the CCP defendants deviated from the standard of care by failing to take prompt steps to identify the tumor, either through a digital rectal examination or a colonoscopy, throughout the course of treatment beginning in January 2006 through September 2008.  Correspondingly, plaintiff asserts early detection would have

allowed for viable treatment before the cancer metastasized to decedent's liver and lymph node.  Since the statute of limitations governing a medical malpractice claim is 2½ years, the services provided in 2006 fall beyond the limitations period unless, as plaintiff contends, there was a continuous course of treatment provided by Clift (see CPLR 214-a; Nykorchuck v Henriques, 78 NY2d 255, 258 [1991]).  Under the continuous course of treatment doctrine, the 2½-year period does not begin to run until the course of the treatment ends, provided "the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (Nykorchuck v Henriques, 78 NY2d at 258 [internal quotation marks and citations omitted]).

Given the treatment sequence outlined above, we find that Supreme Court properly determined that the continuous treatment doctrine did not apply to toll the statute of limitations for treatment that Clift provided in 2006.  At that time, decedent was treated for upper abdominal pain and, while a colonoscopy and follow-up appointment were recommended, no such appointment was made for over 2½ years.  By comparison, in July 2008, decedent was referred to Clift for complaints of lower abdominal pain and rectal bleeding.  We conclude that the record does not support either a finding that treatment was rendered for the same illness or that there was a mutual anticipation of future treatment (see Casale v Hena, 270 AD2d 680, 682 [2000]; compare Aulita v Chang, 44 AD3d 1206, 1208-1209 [2007]).  It follows that any claim for services rendered by Clift in 2006 is barred by the statute of limitations.

In response to plaintiff's timely claims with regard to the treatment he provided in 2008, Clift submitted an affidavit wherein he set forth the treatment he provided in July 2008, when decedent had a CT scan that revealed diverticulitis but no mass, and August 2008, when he scheduled a colonoscopy based on decedent's complaints of rectal bleeding.  He opined that it was within the standard of care to treat the diverticulitis before performing a colonoscopy.  Further, although Clift also conceded that he did not perform a digital rectal examination in July or August 2008, he explained that, since the September 2008 colonoscopy revealed that the tumor was located 10 centimeters

from the anal verge, it would not have been discovered upon such an examination.[1] Moreover, Clift opined that, since the colonoscopy revealed that decedent had stage IV adenocarcinoma, the earlier detection of this condition on July 22, 2008 "would not have affected her care, treatment or likelihood of a cure." In our view, Clift's submissions satisfied his burden of proof as to both the care provided and as to proximate cause, and Supreme Court properly shifted the burden to plaintiff to provide competent expert medical opinion evidence raising genuine issues of material fact as to deviation and causation (see Friedland v Vassar Bros. Med. Ctr., 119 AD3d 1183, 1187 [2014]). Because plaintiff offered no expert proof that Clift's treatment in 2008 adversely affected decedent's prognosis, Supreme Court properly dismissed plaintiff's claims against Clift and AGC (see Caulkins v Vicinanzo, 71 AD3d 1224, 1227 [2010]; Giambona v Stein, 265 AD2d 775, 776 [1999]).[2]

We turn next to the CCP defendants. With specific reference to the course of treatment provided, Aberdale, Henderson and MacDowell each submitted an affidavit opining that the care provided was appropriate and that the symptoms encountered, which did not include lower abdominal pain, did not

---

[1] Plaintiff's expert gastroenterologist opined that Clift was required to perform a digital rectal exam on July 22, 2008, and that, had he done so, he would have detected the tumor located only five centimeters from the anal verge. The flaw in this assessment, as recognized by Supreme Court, is that the medical records actually place the tumor 10 centimeters from the anal verge. In his colonoscopy procedure report, Clift described the location of the tumor as "10 cm from the entry site, and extending proximally for 5 cm." In a corresponding letter referral that same day, Clift elaborated that the tumor was found "beginning 10 cm from the anal verge and extending another 5 cm proximally to 15 cm from the anal verge." The location assumed by plaintiff's expert finds no support in the medical records.

[2] As discussed in greater detail below, plaintiff's hematologist does not address causation with regard to treatment provided by Clift, AGC or the CCP defendants in 2008.

warrant either a digital rectal examination, a pelvic examination or the scheduling of a colonoscopy. In addition, MacDowell submitted an expert affidavit from Jay Dewell Jr., a surgeon, who reaffirmed MacDowell's diagnosis of gallbladder disease, that surgery was warranted and that decedent's symptoms did not raise a concern of colorectal cancer.

The CCP defendants also submitted an affidavit by Sheila Lemke, a physician board certified in hematology and oncology. For her part, Lemke opined that, as of October 2007, decedent's cancer had reached stage IV and had already metastasized to the liver. According to Lemke, when decedent had surgery in December 2008, the surgeon noted that "she presented with synchronous rectal and liver metastasis — meaning that the rectal mass and metatastic disease to the liver developed concurrently." As such, Lemke concluded that decedent's treatment options and prognosis would not have changed even if the tumor was detected in October 2007. In our view, Supreme Court properly determined that the CCP defendants met their initial burden of establishing that the treatment provided was within the standard of care. Further, based on Lemke's affidavit, we agree with Supreme Court that, even if their treatment did fall below the standard of care, the CCP defendants demonstrated that they did not affect decedent's prognosis in any way.

In response to the CCP defendants' prima facie showing as to the standard of care and causation, plaintiff's gastroenterology expert opined that, in view of decedent's symptoms and the reported family history of colon polyps, Aberdale and Henderson deviated from the standard of care by failing to have decedent undergo a colonoscopy.[3] Similarly, plaintiff's general surgery expert opined that MacDowell deviated from the standard of care by failing to refer decedent for a colonoscopy. The record establishes that when decedent first saw Clift on January 17, 2006, she indicated on her patient

--------

[3] Given the location of the tumor described above, we agree with Supreme Court that there is no factual support for plaintiff's malpractice claim based on the CCP defendants' failure to perform a digital rectal examination.

information sheet that there was a family medical history of colon polyps.  The same day, Clift wrote his letter report to Michael Greenblatt, decedent's referring physician at CCP, advising that decedent's family history was "notable for a father who is alive at 76 with . . . a history of colon polyps." Further, Clift's observation was coupled with a recommendation to consider having a colonoscopy in the near future.

Plaintiff's gastroenterology expert opined that the CCP defendants were required, under the standard of care, to review the medical history in decedent's chart.  This expert further opined that, in view of decedent's history, her persistent symptoms and the fact that she had yet to have a colonoscopy, an immediate referral for a colonoscopy was required.  Plaintiff's general surgeon expert echoed the same opinion concerning MacDowell.  Although Clift further explained that decedent informed him that she was uncertain whether her father had polyps, neither decedent's patient information sheet nor Clift's letter report to Greenblatt indicates any such uncertainty.  Nor do we agree with the CCP defendants' contention that the asserted failure to review decedent's chart constitutes a novel theory. Such a review certainly falls within plaintiff's particularized claims that the CCP defendants failed to properly evaluate decedent's complaints and diagnose decedent's cancer.

In response to Lemke's opinion as to causation, plaintiff submitted an affidavit by a hematologist who expressly refuted Lemke's claim that the cancer had metastasized to decedent's liver by October 2007, and opined that a timely diagnosis "would have given the decedent a better likelihood of surviving this type of cancer."  In rendering this opinion, the expert pointed to a CT scan performed on October 13, 2007, an abdominal sonogram and the gallbladder surgery MacDowell performed in November 2007, none of which indicated any liver metastasis.  "Where oncological experts present competing opinions as to causation, particularly about the progression of the disease, there is an issue of fact for the jury to decide" (Polanco v Reed, 105 AD3d 438, 441 [2013]; see Provost v Hassam, 256 AD2d at 878-879).  Here, we agree with Supreme Court's finding that plaintiff's experts raised genuine issues of fact as to whether the CCP defendants deviated from the standard of care and proximate cause with

respect to services provided during 2007.

Finally, we recognize that plaintiff's gastroenterologist expert opined that, as Aberdale's supervising physician, Fruiterman breached his duty to intercede and recommend an appropriate referral for a colonoscopy (see Kavanaugh v Nussbaum, 71 NY2d 535, 546 [1988]; Ruggiero v Miles, 125 AD3d 1216, 1216-1217 [2015]).  That theory of vicarious liability, however, was not set forth in plaintiff's bill of particulars and, thus, Fruiterman's motion for summary judgment was properly granted (see Price-Linden v State of New York, 119 AD3d 1192, 1192-1193 [2014]; Suits v Wyckoff Hgts. Med. Ctr., 84 AD3d 487, 489 [2011]).

McCarthy, J.P., Egan Jr. and Clark, JJ., concur.

ORDERED that the orders are affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court