■ Martha Randall et al., Appellants, v Kingston Hospital, Respondent, et al., Defendants. [23 NYS3d 663]—

Lynch, J. Appeals (1) from an order of the Supreme Court (Melkonian, J.), entered June 5, 2014 in Ulster County, which, among other things, granted a motion by defendant Kingston Hospital for summary judgment dismissing the complaint against it, (2) from the judgment entered thereon, and (3) from an order of said court, entered October 16, 2014 in Ulster County, which, upon reargument, adhered to its original decision.

Plaintiff Martha Randall was admitted to defendant Kingston Hospital (hereinafter defendant) on February 7, 2009 for complications arising from recurring pneumonia, and she remained hospitalized until March 11, 2009. Defendant's records indicate that on February 21, 2009, at approximately 2:45 p.m., Randall complained of a "pounding headache," that its nursing staff contacted Randall's physician and that the physician ordered Tylenol for pain relief. Approximately three hours later, Randall's husband reported to defendant's charge nurse

that Randall was suffering certain changes in mental status. Randall's physician ordered a CT scan that showed that she had suffered an intracerebral hemorrhage or hemorrhagic stroke. The results of the CT scan were communicated to the charge nurse within approximately 35 minutes and a neurologist and neurosurgeon assumed responsibility for Randall's care beginning at approximately 6:50 p.m. on February 21, 2009. As Randall was monitored throughout the night, it became apparent that the hemorrhage continued to grow. Surgery to resect a hematoma was completed on February 22, 2009. As a result of the hemorrhagic stroke, Randall now suffers significant vision loss, has certain cognitive defects and is no longer able to walk without assistance.

In June 2011, Randall and her husband, derivatively, commenced this action for medical malpractice against, among others, defendant, defendant Todd Baldwin (Randall's physician) and defendant Bridge Street Family Medicine (Baldwin's employer). After issue was joined, Baldwin, Bridge Street and defendant all moved for summary judgment dismissing plaintiffs' complaint. Supreme Court granted only defendant's motion and, upon then granting plaintiffs' motion for reargument, adhered to its decision. Plaintiffs now appeal.

On a motion for summary judgment in a negligence-based medical malpractice action, the defendant is "required to establish, through competent evidence, 'either that there was no departure from accepted standards of practice in [the] plaintiff's treatment or that any such deviation did not injure [the] plaintiff' " (*Marra v Hughes*, 123 AD3d 1307, 1308 [2014], quoting *Rivera v Albany Med. Ctr. Hosp.*, 119 AD3d 1135, 1137 [2014]; *see Weeks v St. Peter's Hosp.*, 128 AD3d 1159, 1160 [2015]; *Cole v Champlain Val. Physicians' Hosp. Med. Ctr.*, 116 AD3d 1283, 1283 [2014]). "This burden may be satisfied through a 'physician's affidavit or affirmation describing the facts in specific detail and opining that the care provided did not deviate from the applicable standard of care' " (*Fuller v Aberdale*, 130 AD3d 1277, 1280 [2015], quoting *Cole v Champlain Val. Physicians' Hosp. Med. Ctr.*, 116 AD3d at 1285). Only if the defendant meets this initial burden of establishing its entitlement to judgment as a matter of law does the burden shift to the plaintiff to raise a triable issue of fact (*see Dugan v Troy Pediatrics, LLP*, 105 AD3d 1188, 1191 [2013]).

Here, the gravamen of plaintiffs' claim against defendant is that the nursing staff failed to recognize and timely report that Randall was experiencing visual symptoms indicative of a stroke. Defendant's submissions in support of its motion

included transcripts of testimony given by Randall's husband, Baldwin, Danamarie Haberski, a nurse who cared for Randall, and Theresa Stryker, who served as charge nurse on the day that Randall suffered her stroke. None of the practitioners could recall with great detail the events of February 21, 2009. With the assistance of the medical records, Baldwin recalled that, when he saw Randall that morning at approximately 10:00 a.m., he was aware that she was a smoker, had chronic obstructive pulmonary disease, and was on medications for hypertension and that her blood pressure was elevated. According to Randall's husband, at approximately 2:30 p.m., Randall told him that she "was seeing psychedelic colors and her head was absolutely pounding." He testified that he reported both of these complaints to Stryker. Stryker testified that at approximately 2:45 p.m., she called Baldwin to make him aware of the headache and to get an order for Tylenol because Randall did not want to take Percocet. Stryker testified that, although she had no specific recollection, it was her custom and practice to describe the patient and relay all vital signs while speaking to the treating physician. The records do not indicate anything with regard to Randall seeing psychedelic colors and neither Baldwin, Stryker nor Haberski recalled being advised of this on February 21, 2009. At approxiamately 6:30 p.m., Haberski entered a note in the medical record that Stryker called Baldwin at 3:00 p.m. and that Stryker stated, "I asked Dr. Baldwin if he wanted a CT scan done at [3:00 p.m.] and he stated a CT scan was not required at this time." While she did not doubt the veracity of Haberski's note, Stryker did not recall the described conversation, nor did Baldwin recall discussing a CT scan with Stryker.

Defendant also submitted an affirmation by S. Murthy Vishnubhakat, a board-certified neurologist. Vishnubhakat opined that, generally, the role of the nurse is to follow the physician's orders and report pertinent findings or changes in a patient's condition to the attending physician. Based on his review of the record, Vishnubhakat opined that Stryker provided appropriate care in accord with this standard by contacting Baldwin to report Randall's headache and, pursuant to her custom and practice, Randall's vital signs. According to Vishnubhakat, Randalls's claim that she suffered a stroke as early as 2:45 p.m. is speculative, inasmuch as a "pounding headache" is not necessarily indicative of a stroke. Further, according to Vishnubhakat, even if Randall was seeing psychedelic colors, this was not a neurological change or symptom that would have required a CT scan. Vishnubhakat also explains that, in 2009, there was no method to medically treat

a hemorrhagic stroke. Rather, the only treatment was to remove the resulting hematoma surgically, which was the procedure that was performed on February 22, 2009 by the attending neurosurgeon.

We do not agree with Supreme Court that defendant sustained its prima facie burden relative to the nursing standard of care. First, the record presents a clear factual question with regard to whether Randall's husband told Stryker that Randall was seeing psychedelic colors. Vishnubhakat does not address this point; instead, he opines that if such symptom were present, it would not have warranted a CT scan. This claim does not directly confront plaintiffs' claim, set forth in their expert disclosures, that vision changes are indicative of a stroke, nor does it account for Baldwin's testimony that he would have ordered a CT scan if he had known of other neurological symptoms, including vision loss, which could embrace Randall's complaint of seeing psychedelic colors. Moreover, it does not address whether Stryker deviated from the applicable nursing standard of care by failing to report this visual symptom to Baldwin. As we must view the evidence in a light most favorable to the nonmoving party (*see Marra v Hughes*, 123 AD3d at 1308), we find that defendant did not meet its initial burden as to the applicable standard of care (*see Weeks v St. Peter's Hosp.*, 128 AD3d at 1161).

Defendant claims that even if its nursing staff deviated from the standard of care, such deviation was not the proximate cause of Randall's injuries. To this end, Vishnubhakat averred that, in 2009, there was no method to medically treat a hemorrhagic stroke and that it was speculative to conclude that lowering Randall's blood pressure would have reduced the size of the hemorrhage. In our view, this evidence was sufficient to meet defendant's prima facie burden as to proximate cause. In response, Randall's neurologist opined that, with Randall's risk factors, including the visual changes, defendants should have intervened more quickly to provide treatment to prevent and control the stroke. Further, he opined that the failure to "alleviate and/or cure [Randall's] stroke symptoms . . . deprived [her] of a better clinical outcome resulting from hypertensive encephalopathy resulting in hemorrhage, or a primary cerebral vascular event."* Plaintiffs also submitted an affidavit by an epidemiologist who opined that, given the general association between blood pressure and stroke outcome as compared to Randall's blood pressure at the time that she experienced the

---

* We are mindful that Vishnubhakat does not agree that Randall's symptoms were indicative of hypertensive encephalopathy.

vision changes, "earlier aggressive intervention [to reduce or control her blood pressure] would have improved [her] outcome." Viewing the evidence in a light most favorable to plaintiffs, we conclude that plaintiffs' submissions were sufficient to raise a triable issue of fact with regard to causation (*see Friedland v Vassar Bros. Med. Ctr.*, 119 AD3d 1183, 1187 [2014]; *Cole v Champlain Val. Physicians' Hosp. Med. Ctr.*, 116 AD3d at 1287-1288).

Finally, we reject the parties' arguments with regard to the experts' qualifications. Under the circumstances, we find that these claims are relevant to the weight of the evidence presented, not its admissibility (*see Bell v Ellis Hosp.*, 50 AD3d 1240, 1242 [2008]).

Lahtinen, J.P., Garry, Rose and Devine, JJ., concur. Ordered that the orders and judgment are modified, on the law, without costs, by reversing so much thereof as granted the motion of defendant Kingston Hospital for summary judgment dismissing the complaint against it; said motion denied; and, as so modified, affirmed.